FRANCISCO NÚÑEZ, en su carácter de padre con patria potestad sobre su hijo legítimo JOSÉ LUIS NÚÑEZ, demandante y apelado, *v.* PEDRO RODRÍGUEZ, demandado y apelante.

Núm. 7034.—*Sometido:* Marzo 11, 1937. *Resuelto:* Mayo 28, 1937.

*José López Baralt* y *R. Castro Fernández*, abogados del apelante; *Gilberto Concepción de Gracia* y *C. Santana Becerra*, abogados del apelado. .

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Éste es un caso sobre daños y perjuicios. El 21 de octubre de 1932, en la calle de Martí de Bayamón, la guagua H-135, guiada por Daniel Lugo, lesionó al niño José Luis Núñez. Con tal motivo Francisco Núñez, padre del niño, inició este pleito contra Pedro Rodríguez como dueño de la guagua que tenía dedicada a un negocio de conducción de leche, siendo Lugo Calderón su empleado. Se alegó que las lesiones se produjeron a virtud del manejo negligente de la guagua por el empleado del demandado.

Al contestar el demandado, negó que fuera dueño de la guagua H-135 y que Lugo Calderón fuera su empleado alegando en contrario que la guagua pertenecía a Juan Rivera de quien era empleado el día del accidente Lugo. Negó los actos de negligencia atribuídos al conductor del vehículo y como defensa especial alegó que el accidente se debió a haber salido el niño corriendo de su escuela para atravesar la calle en los momentos en que pasaba la guagua por ésta por su derecha y a poca velocidad.

Fué el pleito a juicio. Practicó su prueba el demandante y el demandado presentó una moción de *nonsuit* basándose

en que no se había demostrado que el vehículo era de su propiedad y que el chófer que lo guiaba fuera su empleado. La moción se declaró sin lugar. Practicó su prueba el demandado. Y el 12 de febrero de 1935 la corte dictó sentencia condenando al demandado a pagar al demandante mil doscientos dólares con costas.

Apeló el demandado y en su alegato señala dos errores cometidos a su juicio por la corte sentenciadora al decidir que era dueño de la guagua el día del accidente y al apreciar la prueba.

El primer señalamiento se subdivide en tres, a saber, errores cometidos al admitir cierta evidencia del demandante, al declarar sin lugar la moción de *nonsuit* y al dar crédito a ciertas declaraciones de testigos del demandante, todo girando alrededor de la propiedad de la guagua.

 Como después de declarada sin lugar la moción de *nonsuit* el demandado presentó su evidencia y como si esa evidencia supliera cualquier falta de la aportada por el demandante, tendría a ese efecto que tomarse en consideración, para el estudio y decisión de la dicha cuestión de propiedad nos basaremos en la totalidad de la evidencia introducida.

La del demandante sobre el extremo que investigamos fué documental y testifical. La primera consistió en una certificación expedida por el Comisionado del Interior creditiva de que el automóvil *truck* (guagua) H-135, constaba registrado a nombre de Pedro F. Rodríguez desde julio 1°., 1932, hasta septiembre 10, 1932, fecha en que aparece traspasado a Juan Rivera, Jr., registrándose el traspaso de Juan Rivera, Jr. a la Farm & Dairy Products, Inc., en diciembre 12, 1932; en otra del Secretario Ejecutivo de Puerto Rico creditiva de que entre los directores de la "Farm & Dairy Products Inc." figura Pedro F. Rodríguez, y en tres más creditivas de que Juan Rivera, Jr. para el año económico 1932–33 no figura como contribuyente por concepto de vehículo de motor alguno en Guaynabo, ni en Bayamón, ni tenía regis-

trado seguro alguno de compensaciones por accidentes del trabajo para amparar el riesgo de transporte de leche.

En la testifical encuéntrase lo siguiente:

Llamado Rafael Milán, Cabo de la Policía Insular, declaró que estuvo en el sitio inmediatamente después del accidente; que habló con el chófer de la guagua, y le dijo que su dueño era Pedro Rodríguez, de Guaynabo, que la dedicaba al negocio de cargar leche y que era chófer de Pedro Rodríguez. Preguntado por el demandado contestó que llegó como entre dos y tres de la tarde, cuando ya se habían llevado al niño, al ver el revolú de gente que iban acompañando un muchachito.

Otro testigo, Antonio Díaz, que presenció el accidente, dijo que habló con el chófer que fué empleado suyo y le preguntó "¿como has hecho eso?" y le dijo "esta guagua la tiene don Pedro sin frenos", que don Pedro Rodríguez era el dueño; que la guagua se dedicaba al transporte de leche de Pedro Rodríguez; que lo sabe porque veía al chófer llevar esa guagua a un garage en que tenía negocios y siempre le decía que iba a repararla. Lo oía decir: "aquí manda esta guagua don Pedro para que la reparen". A repreguntas del demandado, contestó que la conversación con el chófer antes del accidente donde le admitió que la guagua era de Pedro Rodríguez tuvo lugar algo más de tres o cuatro meses antes del mismo; que asegura que en el momento del accidente, el chófer le dijo que la guagua era de Pedro Rodríguez; que no se fijó en letrero alguno; que sabe que la leche que se transportaba era de Pedro Rodríguez porque se lo manifestó el chófer.

Tal la evidencia del demandante, admitida con la oposición del demandado. El primer testigo que éste llamó a declarar fué Juan Rivera, Jr. Le preguntó únicamente si había sido citado y por quién, a qué hora llegó y si fué juramentado, a lo que contestó que fué citado por el demandante, que llegó a las nueve y prestó juramento cuando juraron los demás testigos. Declarada sin lugar su moción

de *nonsuit*, presentó su evidencia. La que guarda relación con la cuestión de propiedad del auto es la que sigue:

Certificación del Comisionado del Interior creditiva de que el automóvil *truck* H-135, figuraba registrado en octubre 21, 1932, a nombre de Juan Rivera, Jr. y parte de las declaraciones de Daniel y José Lugo, Pablo Vázquez y el propio demandado.

Daniel Lugo declaró que allá por el día 21 de octubre de 1932, trabajaba de chófer; que tuvo un accidente ese día; que iba guiando una guagua de transportar leche; que habló con el Cabo que fué allá donde ocurrió el accidente al momento, como a los cinco minutos. Repreguntado por el demandante contestó, con la objeción del demandado, que creía que la guagua era de don Pedro Rodríguez; que cuando fué a trabajar con esa guagua el señor Pedro Rodríguez le habló en su finca; que no conocía otro dueño; que tomaba la gasolina a nombre de Pedro Rodríguez que lo autorizó para firmar a nombre de él; que cree que el 21 de octubre de 1932 era empleado de Pedro Rodríguez. Volvió a preguntarle el demandado y contestó que empezó a trabajar en esa guagua por el mes de marzo de 1932; que cuando empezó a trabajar la guagua no tenía letrero y un mes o mes y medio antes del accidente sí; que tenía el nombre de Juan Rivera, Jr., Transporte de Leche, y tenía el número de una licencia también; que ese letrero lo llevaba la guagua el día del accidente; que cogía leche en casa de Pedro Rodríguez y en otros sitios más; que el señor Pedro Rodríguez le dijo que cobrara su sueldo en el puesto de Juan Rivera, cuando lo colocó; que en la semana anterior y posterior al accidente fué Juan Rivera quien le pagó su sueldo; que a pesar de todo eso sigue creyendo que la guagua era de Pedro Rodríguez. A nuevas repreguntas del demandante contestó que entregó la guagua cuando terminó de trabajar en la misma finca de Pedro Rodríguez, por orden de Pedro Rodríguez.

José Lugo declaró que el día 21 de octubre de 1932, se encontraba trabajando en la guagua del señor Juan Rivera,

una guagua de transporte de leche de Juan Rivera; que era empleado de Juan Rivera, peón de la guagua.

Pablo Vázquez dijo que el día del accidente viajaba como pasajero en la guagua de Juan Rivera, una guagua de transportar leche.

Y el propio demandado manifestó que antes del 21 de octubre de 1932 fué dueño de una guagua dedicada a transportar leche que vendió en agosto de ese año a Juan Rivera, Jr., readquiriéndola para la Farm & Dairy Products, Inc., en ese mismo año para diciembre porque Rivera no terminó los pagos; que la venta a Rivera no fué condicional y que Lugo fué chófer suyo, pero después fué de Rivera; que la leche que Juan Rivera se alquilaba a transportar cuando fué dueño de la guagua era para la Farm & Dairy Products, Inc.

Con esa evidencia como base ¿puede concluirse como concluyó la corte sentenciadora que la guagua en cuestión era de la propiedad del demandado cuando ocurrió el accidente? Veámoslo.

En el caso de *Ramos v. Sucesión de Salvador Nadal,* 29 D.P.R. 587, 590, se resolvió que la inscripción de un automóvil en el Registro del Departamento del Interior a favor de determinada persona constituía evidencia prima facie de que el automóvil pertenecía a esa persona. Y aquí la propia parte demandante presentó esa prueba favorable al demandado, que está además sostenida por la declaración en juicio del demandado, por el testimonio de Juan Rivera, Jr., que citado por el demandante y habiendo comparecido no fué llamado por él a declarar, debiendo presumirse en tal virtud de acuerdo con el artículo 464 del Código de Enjuiciamiento Civil, ed. 1933, artículo 102, núm. 5, de la Ley de Evidencia, que su declaración le hubiera sido adversa; por las declaraciones de José Lugo y Pablo Vázquez y por el letrero que ostentaba la guagua.

¿Destruyó el demandante la presunción de tal manera corroborada? Con tal propósito presentó las admisiones del

chófer a través de sus testigos Milán y Díaz, hizo las repreguntas que conocemos al propio chófer, testigo del demandado, y aportó las certificaciones negativas que también conocemos.

De una parte, pues, tenemos un contrato de venta de una guagua celebrado con más de un mes de anterioridad a la fecha del accidente, declarado ser cierto por los contratantes bajo juramento en corte abierta, hecho público además por un letrero en la propia guagua y conocido en sus consecuencias por los testigos José Lugo y Pablo Vázquez. Y de otra lo dicho por el chófer momentos después del accidente y lo por él declarado en juicio.

Llegar a la conclusión de que la presunción fué destruída, lleva consigo la de que el contrato de venta de la guagua de septiembre 10, 1932, fué simulado y la de que de la simulación se valió uno de los contratantes, el demandado, ayudado por el otro, Rivera, para defraudar al demandante. Requiérese en tal caso prueba fuerte, que satisfaga plenamente la conciencia judicial.

Impresionan las manifestaciones del chófer. Parece que dice la verdad. Las certificaciones negativas tienden a demostrar que Rivera no cumplió con su deber de patrono, ni de dueño. Pero en verdad ni las unas ni las otras son suficientes a nuestro juicio para declarar la simulación y el fraude, tanto más cuanto que Rivera sólo fué dueño de la guagua y el negocio por unos meses y la creencia del chófer de que Rodríguez era el dueño es explicable por haberlo sido en verdad, por haber sido él el que lo empleó cuando tenía el negocio de transporte que continuó aparentemente igual no obstante el traspaso.

Esta misma última consideración que acabamos de hacer o sea que el negocio de transporte continuó aparentemente igual, para tratar de explicar la creencia del chófer, hace surgir la duda de si en verdad hubo o no cambio alguno y de si la realidad era la creencia del chófer por encima del

registro del contrato y del juramento de los contratantes, pero tal duda, por fuerte que ella sea, no permite llegar a conclusión tan grave.

Siendo el expuesto nuestro juicio sobre la prueba apreciada en conjunto, claro es que sin necesidad de entrar a considerar si debió o no admitirse la evidencia objetada y de si el accidente se debió o no a la negligencia del chófer, procede que el recurso interpuesto por el demandado sea declarado con lugar y *la sentencia sea revocada, dictándose otra desestimando la demanda, sin especial condenación de costas.*

Los Jueces Asociados Señores Wolf y Córdova Dávila no intervinieron.