FEDERICO YORDÁN, representado por su madre con patria potestad, FELISA YORDÁN, demandante y apelado, *v.* JOSÉ RÍOS MALDONADO, demandado y apelante.

Núm. 9494.—*Sometido:* Noviembre 13, 1947. *Resuelto:* Febrero 26, 1948.

*Raúl Matos*, abogado del apelante; *Frank Torres*, abogado del apelado.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

La Corte de Distrito de Ponce dictó sentencia en este caso, sobre daños y perjuicios, condenando al demandado a satisfacer al demandante la suma de $1,000, más las costas y $100 en concepto de honorarios de abogado. En la relación del caso, conclusiones y opinión dictada en apoyo de la sentencia la corte hizo constar que consideraba satisfactoriamente probados los siguientes hechos:

"1—El viernes día 19 de enero de 1940, como a las 5:00 P.M., el *truck*, marca GMC, licencia H-576, propiedad del demandado José Ríos Maldonado, y dedicado al negocio de carga y transportación de piedra y cascajo, era conducido por el chauffeur Juan

Lugo, agente y empleado del demandado, por la calle de la Cruz de Ponce, en dirección de Norte a Sur. Al acercarse al cruce o intersección de dicha calle de la Cruz con la calle Aurora, dicho chauffeur no tocó *claxon* ni aparato alguno de alarma, ni redujo la velocidad de dicho vehículo, haciéndolo entrar a dicha intersección de calles a gran velocidad en forma negligente tal que, no teniendo dominio sobre el mismo, lo hizo chocar contra la parte trasera izquierda de una guagüita marca Ford, de las corrientemente llamadas *pisa y corre*, allí y entonces guiada por el chauffeur, Ramón Torres Almodóvar.

"2.—Dicha guagüita Ford era conducida por dicho chauffeur por la calle Aurora en dirección de Oeste a Este, por su derecha y a una velocidad moderada, habiendo tocado claxon al acercarse y entrar a la referida intersección de calles habiendo ya casi cruzado la calle de la Cruz cuando recibió el impacto del truck. Con motivo y consecuencia del choque, el chauffer de la guagüita perdió el control de dicho vehículo desviándose éste hacia su izquierda y atrapando al demandante contra un poste situado en la acera norte de la calle Aurora junto al cual se encontraba dicho demandante montado en una bicicleta, pero recostado sobre dicho poste a una distancia de aproximadamente 20 pies de la intersección de las referidas calles de la Cruz y Aurora, quedando la pierna derecha del demandante pillada por la guagüita contra la rueda delantera de la bicicleta y ésta contra el poste, sufriendo excreciones y hemorragias en los tejidos blandos de dicha pierna derecha.

"3—El demandante fué conducido al Hospital Tricoche donde se le hizo la primera cura, luego fué llevado a su casa y más tarde asilado en la Clínica del Dr. Pila, donde estuvo veinte y tres días al final de los cuales fué dado de alta. Luego asistió diariamente a dicha Clínica por espacio de quince días a recibir tratamiento de calor en la pierna para reducir su inflamación.

"4—Con motivo de los golpes sufridos y su curación y tratamiento el demandante sufrió intensos dolores físicos y angustias mentales. La pierna la siente torcida y cuando hace ejercicio siente dolor en la misma. Con dicho motivo y al entrar a servir en el Ejército Americano sólo pudo ser asignado a trabajos clericales. El demandante incurrió, además, en gastos por la suma de setenta y cinco dólares por honorarios médicos."

No conforme con la sentencia el demandado apeló, y alega que la corte inferior erró: (1) al dictar sentencia a favor de Federico Ramos Yordán, persona mayor de edad, a base

de una demanda radicada por Federico Yordán, representado por su madre con patria potestad, Felisa Yordán, sin que haya mediado sustitución de partes; (2) al estimar probados los daños alegados, sin que hubiera prueba pericial médica al efecto; (3) al permitir enmendar la demanda para sustituir el número del truck por el de otro truck, y (4) al estimar que el truck de referencia era propiedad de José Ríos Maldonado para la fecha del accidente; que formaba parte de una empresa de éste y que era guiado por un chófer del demandado.

■■ En cuanto al primer señalamiento, arguye el apelante que se radicó una demanda estableciendo una acción bajo los artículos 60 y 61, Código de Enjuiciamiento Civil, y se dictó sentencia predicada en una acción distinta (daños y perjuicios al amparo del artículo 1802 del Código Civil). No tiene razón el apelante. Es cierto que al iniciarse la acción en el año 1940, Federico Yordán era menor de edad y compareció representado por su madre con patria potestad y que a la fecha del juicio ya había cumplido su mayoría de edad y había sido reconocido por su padre natural. Empero, la acción se inició, según demuestran las alegaciones de la demanda, por la madre, no para su propio beneficio bajo el artículo 60 del Código de Enjuiciamiento Civil, sino para beneficio de su hijo como parte perjudicada, y amparado por los artículos 1802 y 1803 del Código Civil (Ed. 1930). Son, en efecto, como dice el apelante, dos causas de acción distintas,(1) pero en el caso de autos la acción nunca se predicó en el artículo 60 del Código de Enjuiciamiento Civil.

Tenemos, además, que la cuestión sobre sustitución de partes nunca fué levantada en la corte inferior por el demandado, y por el contrario el propio demandante llamó la atención a la corte sobre el hecho al comenzar el juicio, sin que el demandado hiciera objeción alguna a que el mismo continuara. Bajo estas circunstancias, creemos que el hecho

---

(1)*Izquierdo* v. *Andrade*, 44 D.P.R. 727; *Carrasquillo* v. *Am. Missionary Association*, 61 D.P.R. 867.

de que en el transcurso del procedimiento el demandante llegara a su mayoría de edad no implica que tuviera que solicitar se enmendara la demanda para continuarla por su propio derecho, aunque pudo hacerlo, ya que dicha enmienda no hubiera variado la causa de acción, pues como hemos dicho la acción iniciada por la madre no era para su propio beneficio, sino para el de su hijo. *Cf. Rosario* v. *Suárez*, 67 D.P.R. 589.

■ No se cometió el primer error, ni tampoco el segundo, ya que en cuanto a las lesiones que recibió el demandante, el tratamiento a que fué sometido y el tiempo que duró, él podía declarar como testigo. Cualquier referencia incidental en términos técnicos usados por el demandante, tales como golpes en la "tibia", inflamación, dolores en los tendones y el uso de "diatermia", son tan conocidos y de uso corriente que no implican que tuviera que ser un perito el único que pudiera usarlos. Si nos fijamos en las conclusiones de hecho de la corte inferior, marcadas con los números 3 y 4, supra, veremos que la indemnización no se concedió porque el demandante quedara incapacitado parcialmente, sino más bien por los golpes sufridos en la pierna derecha, su curación y tratamiento, y los dolores sufridos entonces y los que continuó sintiendo posteriormente.

■ El tercer señalamiento es al efecto de que la corte erró al permitir una enmienda a la demanda, después de practicada la prueba del demandante, a virtud de la cual se cambió el número del truck, 51372, según aparecía en la demanda, por el número H–576, que tenía en la licencia del Departamento del Interior, ya admitida en evidencia.

Al permitir la enmienda, la corte citó la Regla 15(*b*) de las de Enjuiciamiento Civil(²) y además hizo constar que

---

(²)La Regla 15 (*b*) dispone: ''Enmiendas para Conformar las Alegaciones a la Evidencia.—Cuando con el consentimiento expreso o implícito de las partes o por orden de la corte se someten a juicio cuestiones litigiosas no suscitadas en las alegaciones, tales cuestiones se considerarán a todos los efectos como si se hubiesen suscitado en las alegaciones. La enmienda de las alegaciones que fuere necesaria para conformarlas a la evidencia y para suscitar

oiría con gusto cualquier moción del demandado para la continuación o suspensión del caso para darle una oportunidad para controvertir la prueba presentada. Esto no obstante, el demandado personalmente y después de un incidente en que su abogado quiso retirarse del caso por la forma en que el demandado se dirigió a la corte oponiéndose a la suspensión sugerida, hizo constar que tenía prueba para refutar la del demandante, renunció a dicha suspensión e insistió en que continuara la vista.

Antes de admitirse en evidencia la licencia del Departamento del Interior en relación con el truck H–576, ya había declarado el testigo Pedro Juan Herrera, que venía montado en dicho truck y presenció el accidente, y quien declaró que el número del truck era el 576 H. Arguye el apelante que este testimonio no era suficiente para que la corte admitiera en evidencia la licencia primero, y luego permitiera la enmienda a la demanda. No tiene razón. La admisión de la licencia no está alegada como error en este recurso, y en cuanto a la enmienda a la demanda estaba plenamente autorizada bajo la Regla 15(b), supra. Véase 1 Moore's *Federal Practice*, 807 a 809. Y no hubo perjuicio para el demandado, pues la corte le dió la oportunidad de solicitar la suspensión del juicio y expresamente la rechazó.

■■ Por el último señalamiento, se alega que la corte erró al estimar que el truck que causó el daño era propiedad del demandado para la fecha del accidente; que formaba parte de una empresa y era guiado por un chófer del demandado.

---

dichas cuestiones, puede hacerse a moción de cualquiera de las partes en cualquier tiempo, aun después de dictarse sentencia; pero la omisión de enmendar no afectará el resultado del juicio en relación con tales cuestiones. Si se objetare a la evidencia en el juicio por el fundamento de no estar comprendida en las cuestiones litigiosas suscitadas en las alegaciones, la corte permitirá las enmiendas y lo hará liberalmente siempre que con ello se facilite la presentación del caso en sus méritos y la parte que se oponga no demuestre a satisfacción de la corte que la admisión de tal evidencia le perjudicaría en el mantenimiento de su acción o defensa en los méritos. La corte puede conceder una suspensión para permitir a la parte objetante controvertir dicha evidencia."

La prueba del demandante, creída por la corte senten-ciadora, demostró que el truck H–576 estaba inscrito en el Departamento del Interior a nombre del demandado para el 19 de enero de 1940; que el propio demandado le admitió al padre del demandante, al día siguiente del accidente, que el truck que lo causó era suyo y que un chófer suyo lo guiaba; y se probó además, que el demandado se dedicaba al negocio de transportar materiales en trucks y que el truck que causó el daño venía de la Central Mercedita hacia Ponce cargado de arena.

El demandado trató de probar que dicho truck había sido vendido a Esperanza Aguilera el 15 de enero de 1940, y al efectó presentó y se admitió en evidencia una Planilla de Tasación del truck H–576 para el año 1940–1941, la que aparece jurada por dicha señora Aguilera el 8 de abril de 1940. Es después de la firma y juramento de dicha señora, en el apartado titulado "Observaciones", que se dice lo siguiente: "Adquirido en enero 15, 1940." No erró, a nuestro juicio, la corte al resolver que la prueba del demandante, unida a las admisiones del demandado, fué suficiente para dejar establecido que el truck H–576 era propiedad del demandado el día que ocurrió el accidente. Prueba de la inscripción oficial de un vehículo de motor bajo una ley que requiere tal inscripción,(³) constituye prueba prima facie de que pertenece a la persona a nombre de quien aparece inscrito. La parte contraria, desde luego, puede controvertir esta presunción. 1-2 Huddy *Cyclopedia of Automobile Law* 393, sec. 180; *Delano* v. *La Bounty,* 114 Pac. 434; *Hammond* v. *Hazard,* 180 Pac. 46; *Curry* v. *Stevenson,* 26 F.2d 534; *Claudio* v. *Delgado,* 44 D.P.R. 753. La prueba testifical del demandado, en cuanto a este particular se refiere, no le mereció crédito a la corte inferior, y así

---

(³) Tanto la Ley núm. 75 para Reglamentar el Uso de Vehículos de Motor en Puerto Rico, aprobada el 13 de abril de 1916 (pág. 144), como las aprobadas posteriormente, requieren que todo vehículo de motor sea inscrito por su dueño en el Departamento del Interior, y el Comisionado entonces le expida la licencia correspondiente.

lo hizo constar, y en cuanto a la documental, no erró al resolver que la declaración de tasación prestada por la señora Aguilera varios meses después de ocurrido el accidente, o sea el 8 de abril de 1940, y en la cual, sin jurarlo, se hizo constar que había adquirido el truck el 15 de enero de 1940, "no probaría, de probar algo, que en enero 19 de 1940 ya Esperanza Aguilera era dueña de dicho truck. Las palabras 'adquirido en enero 15, 1940', insertas en la planilla, *después de la firma* de la contribuyente no tienen valor probatorio alguno con respecto a la fecha del alegado traspaso. En todo caso, dicha declaración sería evidencia *self-serving* y por lo tanto no admisible. Véase por analogía, *Rosario* v. *Jiménez*, 63 D.P.R. 370."

No habiéndose cometido ninguno de los errores señalados *se confirma la sentencia apelada.*