José A. Muñoz Meléndez, demandante y recurrente, *v.* Michael Kelly Farmer, etc., et al., demandados y recurridos.

*Número:* R-75-186          *Resuelto:* 29 de octubre de 1975

*Dapena, Dapena & Toro,* abogados del recurrente; la otra parte no compareció.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El presente recurso rebasa sus hechos a la luz de la alta incidencia de accidentes vehiculares en nuestra isla, (1) y las múltiples controversias que a los fines de imponer responsabilidad sobre sus dueños, tanto de índole civil como criminal, se originan constantemente en los tribunales de instancia. Estimamos necesario examinar en todo su alcance las normas legales relacionadas con el traspaso de vehículos de motor establecidas en la Ley Núm. 141 de 20 de julio de 1960, según enmendada (9 L.P.R.A. sec. 301 *et seq.*) y los efectos positivos y negativos evidenciarios que las mismas generan. Veamos.

El Tribunal Superior, Sala de Ponce, consideró probado que el 18 de abril de 1972 el vehículo del demandante recurrente José A. Muñoz Meléndez fue impactado por el vehículo marca Chevrolet, modelo 1968, tablillas 30P380, debido a la

---

(1) Conforme al Informe Anual del Departamento de Transportación y Obras Públicas correspondiente al año fiscal 1972–73 ocurrieron 67,373 accidentes durante dicho período. En el año 1974 había 841,974 vehículos registrados.

negligencia exclusiva de su conductor Michael Kelly Farmer, como consecuencia de lo cual aquél sufrió una herida en la cabeza y contusiones, hematomas y laceraciones en distintas partes del cuerpo y su automóvil, valorado en $1,800.00 resultó en pérdida total. Concluyó además que:

"Con fecha del 14 de abril de 1972 la codemandada Academy Metal Products Inc., y representada por su Secretario y agente a cargo de la oficina central en Puerto Rico, transfirió mediante documento privado la propiedad del vehículo Chevrolet modelo 1968, tablillas 30P380 al codemandado Michael Kelly Farmer.

El Sr. David Saldaña, como Secretario de Academy Metal Products Inc., efectuó la transacción, recibiendo el dinero en efectivo y depositándolo en el First National City Bank, que era el banco donde la compañía tenía su cuenta bancaria.

Al momento del accidente el propietario del vehículo Chevrolet modelo 1968, tablillas 30P380 era el Sr. Michael Kelly Farmer."

En su consecuencia, declaró sin lugar la acción contra la codemandada Academy Metal Products, Inc., absteniéndose de pronunciamiento contra Michael Kelly Farmer por no haberse anotado en su contra la rebeldía. Al relevar de responsabilidad a Academy expuso el siguiente razonamiento jurídico:

"El traspaso de un vehículo de motor deberá hacerse bajo juramento o afirmación ante notario, colector de rentas internas o funcionario expresamente autorizado para ese fin, pero si fuese imposible seguir los procedimientos, el Secretario procederá con la transferencia siempre y cuando éste quede autorizado [sic] en documento fehaciente. (9 L.P.R.A. sec. 511, inciso (c).)

Más [sic] sin embargo esto no impide que se pueda efectuar un contrato de compraventa con relación a un vehículo de motor *sin la exigencia de ese requisito*. Dice el Código Civil de Puerto Rico en el Artículo 1339: 'La venta se perfeccionará entre comprador y vendedor y será obligatoria para ambos si hubiesen convenido en la cosa objeto del contrato, y en el precio, aunque ni la una ni el otro se hayan entregado'."

No conforme la parte demandante interpuso recurso de revisión.

El 11 de septiembre de 1975 emitimos la siguiente Resolución:

"Vista la solicitud de revisión, memorando y documentos anejos, se concede a la parte demandada recurrida un término de quince (15) días para que comparezca por escrito a mostrar causa, si la hubiere, por la cual a la luz de los términos de la sentencia del tribunal de instancia, no deba expedirse el auto solicitado y así expedido, deba revocarse la misma y en su lugar declarar con lugar la demanda condenando a la codemandada Academy Metal Products, Inc., a satisfacer al demandante recurrente la suma de $1,800.00 en concepto de pérdida total de su vehículo y $1,000.00 en concepto de daños por angustias físicas y mentales, luego de haberse deducido la exención de $1,000.00 prevista en la ley creadora de la Administración de Compensación por Accidentes de Automóviles."

La parte demandada recurrida no compareció a mostrar causa, ante lo cual consideramos sometido el recurso.

■■■ En el pasado establecimos la doctrina de que los registros oficiales del Departamento de Transportación y Obras Públicas en que aparezca una persona, en determinada fecha, como dueña de un vehículo de motor, constituye evidencia prima facie de propiedad, susceptible de ser controvertida mediante prueba en contrario. *Díaz Cáceres* v. *Berríos*, 100 D.P.R. 741, 746 (1972); *Yordán* v. *Ríos*, 68 D.P.R. 259, 265 (1948); *Méndez* v. *Lugo*, 68 D.P.R. 276, 279–280 (1948). 11 Blashfield, *Automobile Law and Practice*, págs. 160–164. Como corolario de esta presunción de propiedad, en ausencia de prueba en contra, se entiende que la persona inscrita como dueño del vehículo lo conducía al momento del accidente. *Tapia* v. *Martínez*, 70 D.P.R. 55, 57 (1949). Véase 27 A.L.R. 2d, Anno: *Highway Accidents—Ownership of Vehicle*, págs. 167–197.

En el presente caso reafirmamos la vigencia de dicha doctrina. Sin embargo, se impone que exploremos nuevos con-

tornos sobre cómo se perfecciona una compraventa en casos de vehículos de motor y el momento en que tal traslado de propiedad cobra validez a los fines de un tercero.

Las disposiciones pertinentes de la Ley de Tránsito son las siguientes:

*"Cómo se formalizará el traspaso*

(a) Todo traspaso de vehículos de motor o de arrastre inscritos se *autorizará* mediante la firma o marca *del dueño del mismo y del adquirente.*

(b) El traspaso se formalizará al dorso de la licencia del vehículo de motor o del arrastre. En él deberá expresarse la voluntad del dueño de traspasar al adquirente la propiedad del vehículo de motor o arrastre y la del adquirente de aceptar dicha propiedad y de que se inscriba a su nombre en el registro de vehículos de motor o de arrastres, según sea el caso. Igualmente, deberá expresarse la dirección del adquirente.

(c) El traspaso y aceptación *deberá hacerse bajo juramento o afirmación ante notario, colector de rentas internas o funcionario expresamente autorizado por el Secretario para ese fin.* Si por alguna razón de ley, se solicitare el traspaso, pero fuere imposible seguir los procedimientos antes señalados, el Secretario procederá con el mismo, siempre y cuando que quede autorizado en documento fehaciente.

(d) Una vez formalizado el documento de traspaso, el mismo será radicado en el Departamento por el nuevo adquirente dentro de los diez (10) días siguientes a dicha formalización. El Secretario le extenderá al adquirente un recibo de radicación, que servirá como licencia provisional del vehículo de motor o del arrastre, según sea el caso, hasta la tramitación final del traspaso. Este recibo será llevado en el vehículo de motor o en el vehículo de motor que hale el arrastre. El adquirente deberá entregar este recibo al Secretario tan pronto se le expida a su nombre a licencia del vehículo de motor o del arrastre.

(e) Una vez formalizado el traspaso en la forma ya expresada, el Secretario procederá a inscribir el mismo y a anotar aquellas modificaciones en el registro que resulten de la transacción.

*Efectos del traspaso*

(a) El Secretario expedirá a todo adquirente de un vehículo

de motor o arrastre inscrito, una licencia donde se hará constar el hecho de ser el nuevo dueño del vehículo de motor o del arrastre.

(b) Dicha licencia *no será expedida* hasta tanto el traspaso haya quedado inscrito en el registro de vehículos de motor o de arrastres, pero sus efectos se retrotraerán a *la fecha* en que *se formalizó* el documento de traspaso." Ley Núm. 141 de 20 de julio de 1960, según enmendada, (9 L.P.R.A. secs. 511 y 512). Énfasis suplido.

Una lectura de las transcritas disposiciones, refleja que el Legislador diseñó un procedimiento especial para canalizar los traspasos de propiedad de los vehículos de motor, a saber, requerir del dueño y del comprador constancia *bajo juramento* de la transacción ante notario, (2) colector de rentas internas u otros funcionarios expresamente autorizados a tal fin. El requisito de ley de que sea ante tales funcionarios tiene por objeto de que quede claramente constatado y de manera autosuficiente, no sólo la realidad de la transacción, sino la certeza de su fecha. Unicamente, como procedimiento supletorio, si fuere imposible seguirse el procedimiento general y si la transacción queda plasmada en otro documento fehaciente, se autoriza al Secretario de Transportación y Obras Públicas a realizar el traspaso de la propiedad. La ley dispone, además, que el comprador viene obligado bajo sanción penal, a radicar el traspaso dentro de los diez (10) días de haber sido realizado, intentando con ello establecer una relativa simultaneidad entre la transacción y su pronta acreditación en los archivos oficiales del Estado. Esta oportuna acreditación se hace constar en los archivos del Departamento (3) de Transportación y Obras Públicas, los cuales

---

(2) La importancia de que en actos de traspasos de vehículos de motor el notario dé estricto cumplimiento a la Ley Notarial queda evidenciada por nuestra decisión de *In re Torres Santiago*, 95 D.P.R. 230 (1967).

(3) La magnitud y la actividad que genera el procesamiento de las transacciones de vehículos de motor se refleja en el siguiente cuadro oficial:

representan un registro sobre propiedad mueble de gran movilidad, que guardan cierta semejanza al Registro de Propiedad inmueble pues contienen una descripción exacta del vehículo, su historial y aquellos gravámenes que se anoten por razón de venta condicional, accidentes o multas administrativas. Sec. 2-102 de la Ley de Tránsito (9 L.P.R.A. sec. 402).

▮ El valor del procedimiento establecido en la ley trasciende la simple conveniencia de las partes. Los requisitos mencionados no son una mera formalidad. Constituyen unos trámites sabios encaminados a poder identificar y señalar, en todo momento, la persona propietaria de un vehículo de motor a los fines de cualquier contingencia judicial. Con ello se evitan múltiples controversias fácticas y jurídicas, que de ordinario no son de fácil detección y esclarecimiento entre las cuales se destaca la compraventa fraudulenta o simulada con posterioridad a la ocurrencia de un accidente con miras a evitar responsabilidad frente a terceros.

▮ Al exigir la Ley de Tránsito, que es una ley especial, que se dé fe pública del acto correspondiente a la com-

| Actividad | 1974–75 |
|---|---|
| *Transacciones de Vehículos de Motor* | |
| Registros Nuevos | 75,347 |
| Traspasos | 16,818 |
| Cambios Direcciones | 3,313 |
| Cancelaciones | 8,724 |
| Ventas | 2,790 |
| Multas Gravadas | 503,762 |
| Multas Dadas de Baja | 240,085 |
| Multas Administrativas | 268,322 |
| Comprobantes de Pago | 102,003 |
| Vehículos Dados de Baja | 1,535 |
| Otras Transacciones | 14,042 |
| Subtotal | 1,236,741 |

Informe Anual 1974–75 de la Dirección de Servicios Técnicos del Departamento de Transportación y Obras Públicas, pág. 14.

praventa de un vehículo de motor, pierde eficacia la regla general dispuesta en el Art. 1339 del Código Civil (31 L.P.R.A. sec. 3746) aplicada por la sala sentenciadora, al efecto de que toda venta se perfecciona mediando simplemente conformidad entre las partes sobre la identidad en la cosa y en el precio, independientemente del acto de la entrega. Esta regla general tiene obligatoriedad entre las partes, pero no frente a terceros, a quienes las partes contratantes no pueden oponer una compraventa que no haya sido perfeccionada en virtud de las disposiciones de la Ley de Tránsito. [4]

En contraposición a la mayoría de los bienes muebles susceptibles de tráfico comercial, en nuestra sociedad un vehículo de motor constituye un bien mueble cuyo posible uso perjudicial no descansa sobre bases especulativas ni remotas sino sobre premisas reales e inmediatas. Una vez puesto en marcha, dependiendo de la forma en que sea operado, puede convertirse en un instrumento causante de grave daño a las personas o a sus propiedades. De ahí que la necesidad de que su propietario sea fácilmente identificado en todo momento constituye una determinación de gran interés social [5] por lo que el cumplimiento con los requisitos de ley no es susceptible de ser dejado al arbitrio de las partes contratantes. Ello explica la razón del Poder Legislativo para requerir la autenticidad del acto.

---

[4] El propio Código Civil, luego de sentar la norma sobre la obligatoriedad de los contratos, cualquiera que sea su forma, Art. 1230 (31 L.P.R.A. sec. 3451) señala en su Art. 1231 (31 L.P.R.A. sec. 3452) que cuando fuere menester seguir una forma especial para ser efectiva una obligación, las partes podrán compelerse recíprocamente a que se lleve tal formalidad. Nuevamente se limita el ámbito de la obligatoriedad del contrato para que sea entre las partes, pero no frente a terceros.

[5] "Los requisitos del estatuto van dirigidos a reglamentar, en el ejercicio del poder de estado, un control efectivo sobre el uso de las carreteras, procurar la debida observancia de los deberes legales de aquellos que hacen uso de los automóviles y mantener al día los récords públicos para facilitar la identificación de los vehículos y de sus dueños." Fisher, *Vehicle Traffic Law*, pág. 389 (1961).

■ Para resumir, resolvemos que la Ley de Tránsito, como ley especial, goza de supremacía sobre las disposiciones del Código Civil relativas a la forma y momento en que de ordinario se perfeccionan los contratos de compraventa sobre bienes muebles por lo que tratándose de la compraventa de vehículos de motor, su perfeccionamiento no tiene eficacia jurídica, para fines de tercero, hasta la fecha en que la transacción se formaliza ante uno de los funcionarios autorizados por ley. Ello implica que cualquier prueba tendente a destruir la presunción de propiedad que emane de los registros oficiales debe estar basada en documentos autorizados ante un funcionario público conforme lo dispone la ley, y no en orden a convenios orales o escritos privados carentes del elemento de autenticidad de fecha cierta.

■ Aplicadas las normas antes expuestas al caso que nos ocupa, se impone la revocación de la sentencia que declaró sin lugar la demanda contra la codemandada Academy Metal Products, pues ésta no formalizó la supuesta venta a Michael Kelly Farmer con anterioridad a la fecha del accidente. No sólo no se cumplió con ninguno de los preceptos relativos a la forma y manera de acreditar tal venta, sino que la prueba documental aducida en apoyo de tal contención resulta de dudoso valor probatorio ya que la misma solamente consistió de un documento *privado* en que se hacía constar tal venta el 14 de abril de 1972 [6] y la hoja de un depósito bancario alegadamente representativos del precio pagado fechado el 28 de abril, esto es, diez (10) días después de ocurrido el

---

[6] En el idioma original que fuera redactado reza así:
"April 14, 1972
To whom it may concern:

This is to certified that Academy Metal Product Caribe Inc. has received from Mike Farmer the amount of *1,725.00* for the sale of 1968 Chevrolet Impala Convertible, license no. 30P380.

Michael Kelly Farmer          David Saldaña"
(fdo.)                      (fdo.)

accidente. El 7 de diciembre de 1972, transcurridos casi ocho (8) meses, es que se formaliza ante notario público tal venta. Como dijimos en *Núñez* v. *Rodríguez*, 51 D.P.R. 642, 648 (1937), para destruir la presunción de propiedad que emana de los registros oficiales es menester ". . . prueba fuerte, que satisfaga plenamente la conciencia judicial."

*Se dictará sentencia declarando con lugar la demanda e imponiendo además a la Academy Metal Products, Inc., $300.00 de honorarios de abogado. Revocada.*

El Juez Presidente, Señor Trías Monge, no intervino. El Juez Asociado, Señor Martín, concurre en el resultado.