**Margarita Rubio GONZALEZ, et al., Plaintiffs,**

v.

**MEDIA ELEMENTS, et al., Defendants.**

**Civ. No. 88–2058(JP).**

United States District Court, D. Puerto Rico.

Jan. 16, 1990.

Francisco M. Troncoso, San Juan, P.R., for plaintiffs.

Benito I. Rodríguez Massó, Metro Office Park, Edif. Universal Ins., Caparra Heights, P.R., for defendant Universal Ins. Co.

Herbert W. Brown, III, Calvesbert & Brown, San Juan, P.R., for defendant Avis Leasing.

María Luisa Martínez, Lasa, Escalera & Reichard, San Juan, P.R., for defendant Media Elements.

Doel R. Quiñones, Hato Rey, P.R., for defendant Lozano.

Keigh A. Graffam, Cordero, Miranda & Pinto, San Juan, P.R., for defendant American Intern.

José L. Delgado, Hato Rey, P.R., for defendant Cent. Nat.

## OPINION AND ORDER

PIERAS, District Judge.

In its previous Status Conference Order dated December 26, 1989, the Court stated it would take into consideration Universal Insurance Company's motion regarding the insurance coverage and insurance con-

tracts. Upon a thorough consideration of the pending motions and legal memoranda previously filed, the Court concludes that on December 21, 1987, Avis was the owner of the car driven by Media Elements employee Francisco Torres Lozano. Furthermore, Universal Insurance Company's policy with Media Elements provides coverage for the accident in the instant case.

## I. THE ISSUE OF OWNERSHIP

Under the Puerto Rico Civil Code Article 1339, 31 L.P.R.A. section 3746, "The sale [of a motor vehicle] shall be perfected between vendor and vendee and shall be binding on both of them, if they have agreed upon the thing which is the object of the contract and upon the price, even when neither has been delivered."

The transfer of the ownership of a vehicle is governed by Article 5 of the Traffic and Vehicle Law, 9 L.P.R.A. §§ 511, 512, which provides in pertinent part:

**How transfer shall be executed**

(a) Every transfer of registered motor vehicles or trailers shall be authorized by the signature or mark of the owner and of the acquirer thereof.

(b) The transfer shall be executed on the back of the license of the motor vehicle or trailer ...

(c) The transfer and acceptance *shall be under oath or affirmation before a notary, a collector of internal revenue or an official expressly authorized by the Secretary for that purpose.* If for any legal reason the transfer is requested but it is impossible to follow the procedure above stated, the Secretary shall proceed with the same provided it is authorized in an authentic instrument.

(d) Once the transfer instrument is executed, the same shall be filed in the Department by the new acquirer within ten (10) days following execution ...

(e) Once the transfer is executed as above stated, the Secretary shall proceed to register the same ... in the register ...

**Effects of transfer**

(a) The Secretary shall issue to every acquirer ... a license and certificate of title ...

(b) Said license *shall not be issued until the transfer has been registered* in the registry of motor vehicles ... but its effect shall be made retroactive to *the date on which the transfer instrument was executed.* (Emphasis added.)

A perusal of these provisions reveals that the law requires a special procedure to be followed when transferring the motor vehicle from the owner to the purchaser: the transaction must be executed under oath or affirmation before a notary, collector of internal revenue, or other officer designated for that purpose. The Secretary is authorized to effectuate the transfer if it is impossible to follow the general procedure and the transaction appears in another authentic instrument. The purchaser is then legally obligated to file the transfer within ten days after it has been executed.

The Supreme Court of Puerto Rico has established the doctrine that the official registry of the Department of Transportation and Public Works, in which a person appears as owner on a certain date, constitutes prima facie evidence that the person is the real owner of the vehicle. *See Hernández Cañete v. Procesadora Montebello, Inc.,* 114 D.P.R. 289, 301 (1983) (per curiam) and cases cited therein. It has also stated that the Traffic Law "enjoys supremacy over the provisions of the Civil Code" which would ordinarily govern contracts for the sale of motor vehicles, because the requirements of the Traffic Law formulate a procedure intended to identify and indicate the owner of a motor vehicle at all times in the event of a judicial contingency. *Muñoz v. Kelly Farmer,* 104 D.P.R. 297, 303–304. For the purposes of a third party, the perfection of the sale of an automobile has no legal effect until the "date on which the transaction *is perfected before one of the officers authorized by law." Id.* at 306 (emphasis added). The Supreme Court has therefore held that any evidence offered to rebut the presumption of ownership created by the official records should be based on documents authorized before a public officer according to the provisions of law rather than private oral or written agreements which lack the element of authenticity. *Id. Cf. Hernández Cañete,* 114 D.P.R. at 293 (in common controversy of ownership *between parties* who allegedly executed an automobile sales contract, rule of *Muñoz Meléndez* is not applicable; Civil Code governs).

▮ In the instant case, Avis claims that it was not the owner of the car—and therefore not liable to plaintiffs—because it had sold the car to codefendant Media Elements in the ordinary course of business pursuant to the terms of the lease agreement more than two months before the accident occurred. According to Avis, its operations manager sent a letter to Media Elements on October 9, 1987, stating that the extended lease contract had expired and forwarding a sales order. Moreover, Avis claims it cancelled the insurance coverage over the automobile as of October 9, 1987. *See* Exhibit I attached to Avis' April 27, 1989, Motion to Dismiss.

This case clearly compels the application of the *Muñoz Meléndez* rule because Avis is attempting to deny ownership for the purposes of avoiding third party liability. Thus, the sale of the car had no legal effect until the date the transfer was perfected by an authorized officer. Avis has failed to rebut the presumption created by the Department of Transportation and Public Works Registry which lists Avis as the owner of the Honda automobile until April 4, 1988, the date the transfer of ownership transaction was recorded. *See* Media Elements' Addendum to Motion in Opposition to Avis Motion to Dismiss and Affidavit attached thereto. It has failed to offer any documents authorized before a public officer containing the essential element of authenticity of a certain date pursuant to Article 5, 9 L.P.R.A. section 511(c). Any evidence regarding the private written lease agreement is insufficient to rebut the prima facie evidence of the registry. Therefore, on December 21, 1987, Avis was the owner of the Honda automobile.

## II. THE ISSUE OF INSURANCE COVERAGE

 Having decided that Avis was the owner of the vehicle at the time of the accident, the Court must now determine whether the insurance policy issued by Universal to Media Elements covers the accident in question. Universal contends that it does not provide coverage under the insurance policy because the lease between Avis and Media Elements was for twelve or more months, and, according to the applicable version of rule 82 of the Insurance Service Office (ISO) Commercial Automobile Manual for Puerto Rico,[1] the hired automobile clause (the clause under which Universal is bound to provide coverage to Media) does not apply to automobiles which are hired for twelve months or more. (The Manual states that a hired automobile endorsement cannot be issued on vehicles leased for over twelve months.) Although this rule, drafted by a group of insurance companies, is not usually requested by or known to the public and is not specifically incorporated into the terms of the policy, Universal contends that as a matter of interpretation, the "Premium" clause in the Special Multiperil Policy Conditions and Definitions General Conditions section of the policy indicates that the rules of the ISO office are incorporated into the policy. This clause states that "[a]ll premiums for this policy shall be computed in accordance with the Company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein." *See* Plaintiff's November 30, 1989 Motion and attached Deposition of Walter Bothwell at 25.

Even if the ISO Manual provides for this interpretation of the policy, we cannot accept it. This failure to provide coverage for the specific risk for which Media was purchasing coverage without describing in particularity the exceptions or non-applicability of the coverage was neither understood nor contemplated by Media when it purchased the policy. Therefore, we conclude that the policy between Universal and Media Elements extends coverage to the automobile involved in this case.

IT IS SO ORDERED.

---

1. According to codefendant Universal's insurance expert Walter Bothwell, the Insurance Services Office is a cooperative originally formed by the insurance companies to act as their actuarial and auditing department in order to make filings on their behalf. After such filings are approved, the Office publishes different manuals used by the property and casualty insurance business. In the case of automobile insurance, the Office publishes the rules and rates that should be applied. Bothwell Deposition at 22, attached to plaintiffs' November 30, 1989 Motion and Memorandum of Law.