MIGUEL RODRÍGUEZ SANTIAGO y OTROS, demandantes y recurridos, *v.* LOURDES UBARRI, VLADIMIR MIRANDA y OTROS, demandados y recurrentes.

*Número:* RE-94-467          *Resuelto:* 19 diciembre de 1996

*Héctor Torres Cartagena*, abogado de la parte recurrente; *Juan T. Peñagaricano Jr.*, abogado de la parte recurrida.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

La codemandada Carla Miranda interpuso un recurso de revisión contra una sentencia dictada el 20 de julio de 1994 por el entonces Tribunal Superior de Puerto Rico,

Sala de Carolina. El 2 de diciembre de 1994 dictamos una resolución en la cual le concedimos a la recurrente un término de sesenta (60) días para que preparara una exposición narrativa de la prueba, en conformidad con la Regla 54.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. El 19 de septiembre de 1995 el tribunal de instancia aprobó la exposición narrativa de la prueba estipulada por las partes, la cual fue presentada ante nuestra consideración. El 6 de diciembre de 1995 emitimos otra resolución en la que concedimos a los demandantes recurridos un término de (20) días para mostrar causa por la cual no debíamos expedir el auto solicitado y revocar aquella parte de la sentencia que impone responsabilidad conjunta a la recurrente. Los demandantes recurridos han comparecido y estamos en situación de resolver.

I

La Sra. Gladys Sánchez Pérez, su esposo Miguel Rodríguez Santiago y la sociedad legal de gananciales compuesta por ambos presentaron una demanda por daños y perjuicios ante el tribunal de instancia contra Lourdes Ubarri, Vladimir Miranda y Carla Miranda.

El 2 de julio de 1992, alrededor de las 5:00 de la tarde, la señora Sánchez salió de su trabajo y se montó en su vehículo con el propósito de recoger a su esposo en el taller donde éste trabajaba. A tal fin tomó la ruta de la carretera Núm. 848, en dirección de Carolina a Trujillo Alto. La codemandada *Lourdes Ubarri* manejaba a la misma hora el vehículo marca Acura Legend, tablilla Núm. BIX-805, por la misma carretera Núm. 848 en dirección contraria a la de la demandante, es decir, de Trujillo Alto a Carolina. A la altura del kilómetro 0.8 perdió el control del vehículo que manejaba e invadió el carril contrario, impactando, en primer lugar, el vehículo que transitaba al frente del vehículo de la demandante y luego impactó el vehículo de la

demandante. La señora Sánchez, a pesar de que llevaba puesto el cinturón de seguridad, impactó violentamente su pecho contra el guía de su automóvil. También recibió intensos golpes en el abdomen, la cadera y en la pierna y rodilla derechas.

Poco después del accidente, el esposo y el padre de la demandante comparecieron al lugar de los hechos. Posteriormente, llegó también el codemandado Vladimir Miranda. Éste le indicó a la señora Sánchez que el vehículo que conducía Lourdes Ubarri era propiedad de él y que se hacía responsable "de arreglarlo todo".

La demandante fue trasladada al Centro de Diagnóstico y Tratamiento de Trujillo Alto y luego fue referida al Hospital San Francisco, donde permaneció hospitalizada hasta el 4 de julio. La prueba médica ofrecida por la parte demandante —y creída por el tribunal— estableció que las lesiones sufridas por la señora Sánchez como consecuencia del accidente representaban un impedimento equivalente a un 11% de la funciones fisiológicas generales y que se trata de una condición de naturaleza permanente.

El vehículo marca Acura Legend que conducía la codemandada al momento de ocurrir el accidente había sido comprado tres (3) meses antes por el codemandado Vladimir Miranda. No obstante, dicho vehículo figuraba inscrito en el Registro de Vehículos de Motor del Departamento de Transportación y Obras Públicas a nombre de la codemandada *Carla Miranda*, hermana de Vladimir. La codemandada *Lourdes Ubarri* estaba autorizada para conducir el vehículo al momento de ocurrir el accidente.

El 20 de julio de 1994 el tribunal dictó una sentencia que declaró con lugar la demanda y condenó a los codemandados Lourdes Ubarri, Vladimir Miranda y Carla Miranda a satisfacer solidariamente a la codemandante Gladys Sánchez Pérez, la suma de veinticuatro mil dólares ($24,000), y al codemandante Miguel Rodríguez Santiago, la suma de mil quinientos dólares ($1,500). En adición, im-

puso a la parte demandada el pago solidario de las costas y la cantidad de ochocientos dólares ($800) en concepto de honorarios de abogado, más intereses a razón del ocho punto cinco por ciento (8.5%) anual, computados a partir de 30 de octubre de 1992.

La recurrente plantea que erró el tribunal de instancia al concluir que a base de la evidencia presentada ella era responsable por los daños causados a los demandantes.

## II

La Sec. 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1751, establece que el dueño de un vehículo de motor será responsable de los daños y perjuicios que cause mediante la operación de dicho vehículo, interviniendo culpa o negligencia, si el conductor de éste obtuvo su posesión mediante la autorización expresa o tácita del dueño.

Por su parte, la Sec. 1-123 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 323, establece que "dueño de un vehículo", para los fines de dicha legislación, es cualquier persona natural o jurídica que tenga registrado a su nombre un vehículo en el Departamento de Transportación y Obras Públicas. Esta disposición establece una presunción de titularidad que constituye una de las excepciones principales al principio rector que rige la responsabilidad extracontractual en Puerto Rico. *Nieves Vélez v. Bansander Leasing Corp.*, 136 D.P.R. 827 (1994). Para activarla, la parte debe presentar previamente una certificación del Departamento de Transportación y Obras Públicas con la información registral del vehículo o una copia certificada de la licencia expedida.

La inscripción del vehículo en el registro del Departamento de Transportación y Obras Públicas crea una presunción *rebatible* de titularidad. La presunción de pertenencia que surge de la inscripción puede ser controver-

tida mediante otra prueba, si ésta es "prueba fuerte que satisfaga plenamente la conciencia judicial". *Muñoz Meléndez v. Farmer*, 104 D.P.R. 297, 307 (1975). Véanse: *Nieves Vélez v. Bansander Leasing Corp.*, supra, pág. 836; *Pérez v. Concepción*, 104 D.P.R. 83 (1975); *Díaz Cáceres v. Berríos*, 100 D.P.R. 741 (1972); *Yordán v. Ríos*, 68 D.P.R. 259 (1948).

En *Nieves Vélez v. Bansander Leasing Corp.*, supra, págs. 836–837, expresamos lo siguiente:

> La situación típica u ordinaria para la impugnación de la presunción de pertenencia es aquella en la cual el vehículo aparece registrado a nombre de una persona como dueño, pero esa persona lo ha vendido a otra, quien no lo tiene inscrito todavía a su nombre. En tales casos, cabe cuestionar la presunción de propiedad que existe respecto al dueño anterior, en cuyo nombre el vehículo aún aparece inscrito. Pero, según hemos resuelto, esa impugnación sólo puede hacerse si la venta del vehículo se formalizó bajo juramento ante un notario o ante algún funcionario expresamente autorizado por ley para tal fin. El mero traspaso por documento privado no es suficiente para impugnar la presunción. *Muñoz Meléndez v. Farmer*, supra. Hemos resuelto ya, pues, que la inscripción que aparece en el Departamento de Transportación y Obras Públicas *establece una fuerte presunción de titularidad dominical.* (Énfasis en el original.)

A la luz de la normativa señalada debemos determinar si existe algún fundamento para impugnar la fuerte presunción de que la recurrente Carla Miranda era dueña del vehículo en cuestión.

## III

El tribunal de instancia manifestó en su sentencia que la prueba aportada por los codemandados se limitó al testimonio de Vladimir y Carla Miranda. Ambos testificaron que el vehículo había sido comprado por Vladimir Miranda y que éste había hecho figurar el automóvil a nombre de su hermana, porque él se encontraba en pleno proceso de divorcio.

Sin embargo, de la exposición narrativa de la prueba se desprende que la demandante, la Sra. Gladys Sánchez Pérez, testificó en el contrainterrogatorio que en el lugar del accidente habló con Vladimir Miranda y le preguntó si ese carro (el que causó el accidente) era suyo y éste le dijo: "sí ese carro es mío, señora", y que él se hacía responsable "por los gastos del carro de ella, por todo, por arreglarme todo". Exposición Narrativa de la Prueba, pág. 5.

La codemandada Lourdes Ubarri testificó también que el dueño del carro era Vladimir Miranda. Que ella sabía que doña Carla Miranda no era la dueña del carro, pero que sabía que el carro estaba a nombre de ella. Exposición Narrativa de la Prueba, pág. 18.

La recurrente Carla Miranda testificó que no había adquirido el vehículo de motor marca Acura 1986, ni poseía vehículo alguno para la fecha del accidente. Declaró, además, que *nunca había autorizado a Vladimir Miranda ni a persona alguna a adquirir dicho vehículo a su nombre.* Añadió que tampoco autorizó a Vladimir Miranda a inscribirlo a nombre de ella en el Registro de Vehículos de Motor del Departamento de Transportación y Obras Públicas; que en la fecha cuando se adquirió el vehículo ella era estudiante universitaria y no tenía ingresos. Aseguró no tener idea de "cómo [era] posible que el vehículo apareciese en el Departamento de Obras Públicas a su nombre", ya que se enteró de ello cuando le entregaron la demanda en su contra. Exposición Narrativa de la Prueba, págs. 19–21.

El codemandado Vladimir Miranda declaró que fue él quien compró el vehículo marca Acura en Bella International de la Avenida 65 de Infantería por el cual pagó ($10,132) al contado, con un cheque de gerente, y que firmó los documentos de compraventa con el nombre de Carla Miranda porque en ese momento él estaba en trámites de divorcio. Además, declaró que nunca le pidió el consentimiento a Carla Miranda para poner el vehículo a nombre

de ella, que Carla se encontraba estudiando en Mayagüez. Exposición Narrativa de la Prueba, págs. 21–22.

Según los testimonios anteriormente descritos, no se trata de la situación típica en la que el vehículo aparece registrado a nombre de una persona como dueño, pero esa persona lo ha vendido a otra, quien no lo ha inscrito. Se trata de una persona que admite haber falsificado la firma de otra en un documento de compraventa y en el documento de inscripción del vehículo, con el propósito de ocultar dicha propiedad de su esposa en aquel momento, con la cual estaba en trámites de divorcio. Lo cierto es que el Sr. Vladimir Miranda admitió desde un principio, en el mismo lugar del accidente, que él era el dueño del vehículo en cuestión.

## IV

■ La Sec. 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, se adoptó para dar una mayor garantía a las personas que son víctimas de accidentes en nuestras vías públicas. Fue su propósito " 'trasladar la carga de los daños a aquella parte que está en mejor posición para soportarla' ". *González v. Seatrain Lines of P.R.*, 106 D.P.R. 494, 501 (1977).

■ Por su parte, a través de las Secs. 2-501 y 2-502 (9 L.P.R.A. secs. 511 y 512), la Asamblea Legislativa estableció un procedimiento especial diseñado para canalizar los traspasos de propiedad de los vehículos de motor; a saber, requerir del dueño y del comprador constancia *bajo juramento* de la transacción ante un notario, colector de rentas internas u otros funcionarios expresamente autorizados a tal fin. Con ello se pretendió evitar múltiples controversias fácticas y jurídicas, que de ordinario no son de fácil detección y esclarecimiento, entre las cuales se destaca el traspaso o la compraventa fraudulenta o simulada con poste-

rioridad a la ocurrencia de un accidente con miras a evitar responsabilidad frente a terceros. *Muñoz Meléndez v. Farmer*, supra, págs. 303–304.

Sin embargo, las circunstancias de este caso tienden a establecer que nos encontramos ante una inscripción nula en el Registro de Vehículos de Motor del Departamento de Transportación y Obras Públicas porque fue hecha a nombre de una persona que ni había comprado el vehículo ni había autorizado su inscripción. Por tal motivo, siendo nula la mencionada inscripción, queda totalmente desvirtuada la presunción de titularidad que establece la Sec. 1-123 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra.*

La sentencia recurrida es incompatible en sus propios términos al imponer responsabilidad *a dos (2) personas por ser dueñas* del vehículo en cuestión: *a la recurrente Carla Miranda, dueña registral, y al codemandado Vladimir Miranda, dueño real.*

Por los fundamentos expuestos, *se expedirá el auto solicitado y se revocará aquella parte de la sentencia dictada por el tribunal de instancia que impone responsabilidad conjunta a la recurrente Carla Miranda.*

El Juez Asociado Señor Negrón García se inhibió.