ANTONIO LUIS NIEVES VÉLEZ y OTROS, demandantes y recurridos, *v.* BANSANDER LEASING CORPORATION y OTROS, demandados y recurrentes.

*Número:* RE-94-286 *Resuelto:* 2 de septiembre de 1994

*Félix R. Figueroa Cabán*, abogado de la parte recurrente; *Rafael Rivera Vázquez*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Nos toca resolver ahora la importante y novel cuestión que declinamos adjudicar en el caso reciente de *Alonso Hernández v. Citibank, N.A.*, 136 D.P.R. 569 (1994). Esa cuestión es la de determinar si el arrendador financiero (*financial lessor*) de un vehículo de motor, que lo tiene registrado a su nombre —en concepto de dueño— en el Departamento de Transportación y Obras Públicas, es el titular de dicho vehículo a los fines de la responsabilidad civil que establece la Sec. 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 141 de 20 de julio de 1960 (9 L.P.R.A. sec. 1751).

I

El 5 de febrero de 1993 Ángel Luis Nieves Vélez, su esposa Blanca Beníquez de Nieves y la sociedad de gananciales integrada por ellos, presentaron ante el Tribunal Superior, Sala de San Juan, una demanda contra Bansander Leasing Corporation y su compañía aseguradora.[1] En ésta se alegó que el 5 de octubre de 1992 el señor Nieves Vélez había sido impactado por un vehículo mientras caminaba por un cruce de peatones y que ello ocurrió debido a la negligencia del conductor del vehículo, Eric Rodríguez Rivera, de 19 años de edad, quien no se detuvo ante la señal de luz roja en su contra. Se alegó también que, a consecuencia de dicho accidente, el demandante había sufrido tres fracturas en su brazo izquierdo y golpes múltiples en el cuerpo. Los demandantes alegaron, además, que al momento del accidente el vehículo en cuestión era propiedad de la demandada, Bansander Leasing Corporation.

---

[1] Posteriormente se enmendó la demanda para incluir como parte demandada al Banco Santander Puerto Rico, del cual Bansander Leasing Corporation es una subsidiaria.

En su contestación a la demanda, Bansander Leasing Corporation aceptó que el vehículo le pertenecía y que lo "operaba y administraba", pero negó su responsabilidad por los daños ocurridos.

El 21 de abril de 1993 Bansander Leasing Corporation presentó una demanda contra tercero contra Edwin Rodríguez González, su esposa, la sociedad de gananciales integrada por ellos y su hijo, Eric Rodríguez Rivera, quien conducía el vehículo al momento del accidente. En ésta se alegó que Rodríguez González había obtenido la "posesión, uso y disfrute" del vehículo involucrado en ese accidente en virtud de un contrato de arrendamiento financiero otorgado con Bansander Leasing Corporation;(2) y que los terceros demandados debían responder al demandante original o a Bansander Leasing Corporation por los daños ocasionados a Nieves Vélez.

Posteriormente Bansander Leasing Corporation solicitó la desestimación de la acción en su contra. Alegó que era el arrendador financiero del vehículo que conducía el tercero demandado, Eric Rodríguez Rivera; que constaba como titular registral en el Departamento de Transportación y Obras Públicas, pero que no era realmente el dueño del vehículo, sino un mero titular registral a los únicos efectos de mantener una garantía sobre la unidad arrendada; que el vehículo no estaba bajo su control, sino bajo el control del arrendatario, y que, por lo tanto, no debía responder por los daños causados por el vehículo a un tercero.

El 28 de abril de 1994 el tribunal de instancia dictó una sentencia sumaria parcial final mediante la cual denegó la

---

(2) Según surge del expediente, el contrato de arrendamiento financiero del vehículo fue otorgado el 2 de junio de 1990 entre el señor Rodríguez González y Leaseway of Puerto Rico, Inc. El 30 de agosto de 1990 el Banco Santander Puerto Rico adquirió el contrato aludido, como parte de los activos del Caguas Central Federal Bank. Leaseway of Puerto Rico, Inc. continuó administrando el contrato a nombre del Banco Santander Puerto Rico hasta el 30 de junio de 1991. El 1ro de julio de 1991 Bansander Leasing Corporation, subsidiaria del Banco Santander Puerto Rico, asumió la administración del contrato y, posteriormente, el vehículo fue inscrito a su nombre en el Departamento de Transportación y Obras Públicas.

solicitud de desestimación presentada por la demandada. Determinó que Bansander Leasing Corporation, como arrendador financiero, era el dueño del vehículo bajo la Ley de Vehículos y Tránsito de Puerto Rico y, como tal, tenía la responsabilidad primaria por los daños causados al demandante, de prevalecer éste en su causa.

Inconforme con la sentencia dictada, el 10 de junio de 1994 la parte demandada recurrió ante nos mediante solicitud de revisión y planteó la cuestión de derecho siguiente:

> Incidió el Honorable Tribunal de instancia al determinar que el arrendador financiero es el dueño contemplado bajo el Artículo 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico e imponer responsabilidad a Bansander Leasing Corporation.

Hallándonos en aptitud de decidir —*Rivera Pérez v. Carlo Aymat*, 104 D.P.R. 693 (1976)— acogimos el recurso a fin de revisar los procedimientos habidos en el tribunal de instancia.

## II

Antes de resolver la cuestión aludida, para completar la descripción de los hechos pertinentes es menester aludir a los términos esenciales del contrato de arrendamiento vehicular en cuestión.

Conforme a dicho contrato, Rodríguez González se obligó a pagarle al arrendador la cantidad de $379 mensuales por la posesión, uso y disfrute del automóvil (*possession and quiet enjoyment of the unit*) durante un período de 60 meses. El uso del vehículo, por el arrendatario, estaba limitado por varias condiciones restrictivas fijadas contractualmente por el arrendador, tales como que: (1) el automóvil sólo se usaría dentro de los confines territoriales de Puerto Rico; (2) no podía utilizarse para transportar comercialmente personas o carga, y (3) el arrendatario no podía subarrendar el vehículo. Al cabo del término del al-

quiler, el arrendatario tendría derecho a adquirir el vehículo pagándole al arrendador el valor residual acordado en el contrato ($4,500). De lo contrario, el arrendatario estaba obligado a devolver y a entregar el vehículo a Bansander Leasing Corporation.

El arrendatario tenía también la obligación de pagar el costo de una póliza de seguro de responsabilidad pública a favor de Bansander Leasing Corporation como coasegurado, con una cubierta mínima de $100,000 por persona, $300,000 por daños corporales debidos a accidentes y $50,000 por daños a la propiedad debidos a accidentes.

Finalmente, en el contrato se estipulaba, en términos claros, que dicho contrato era un acuerdo de alquiler entre las partes que no transfería de modo alguno el título de propiedad al arrendatario. Decía expresamente la cláusula trece del contrato lo siguiente:

> *Ownership and Return of Vehicle.* This Agreement is one of lease only and title to and ownership of the vehicle, including all related accesories, equipment and modifications, will remain in Leaseway. Customer has not and does not by this Agreement acquire any title or proprietary rights in the vehicle, and if required by Leaseway or by law, Customer will display notices or placards identifying that the vehicle is leased.

## III

La Sec. 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, establece con claridad que el *dueño* de un vehículo de motor es responsable de los daños y perjuicios que se causen por negligencia o culpabilidad durante la operación de dicho vehículo si el conductor de éste obtuvo su posesión mediante la autorización expresa o tácita del dueño.

Esta sección constituye una de las excepciones principales al principio rector que rige la responsabilidad extracontractual en Puerto Rico. Como se sabe, la obligación de reparar daños en nuestro ordenamiento jurídico

generalmente dimana de un hecho propio. Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Sin embargo, por excepción, hay responsabilidad personal por hechos ajenos en casos particulares específicamente dispuestos por ley, cuando ésta fija un nexo jurídico previo entre el causante del daño y quien está obligado a repararlo. *Vélez Colón v. Iglesia Católica*, 105 D.P.R. 123 (1976); *Vélez v. Llavina*, 18 D.P.R. 656 (1912). Tal es el caso de las disposiciones del Art. 1803 del Código Civil, 31 L.P.R.A. sec. 5142, y, análogamente, de la disposición aludida de la Ley de Vehículos y Tránsito de Puerto Rico.

■ La responsabilidad *vicaria* que establece la sección citada de la Ley de Vehículos y Tránsito de Puerto Rico obliga al dueño de un vehículo de motor por los daños culposos o negligentes causados mediante la operación de dicho vehículo, como si los hubiese causado el propio dueño. En vista de ello, si Bansander Leasing Corporation era efectivamente el dueño del vehículo conducido por Rodríguez Rivera, como alega la parte demandante recurrida, entonces indudablemente la responsabilidad civil por el accidente recaería sobre Bansander Leasing Corporation, como resolvió el tribunal de instancia.

Como puede observarse, pues, la cuestión ante nos se reduce a determinar si a Bansander Leasing Corporation, como arrendador financiero del vehículo en cuestión, le aplica la responsabilidad civil que establece la Sec. 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*.

■ Conforme a la sección citada, la responsabilidad vicaria que ésta dispone surge una vez se establezcan jurídicamente dos elementos esenciales: (1) quién es el dueño del vehículo, y (2) si la persona bajo cuyo control estaba el vehículo había obtenido su posesión por autorización del dueño. Al dilucidar estos dos asuntos, como precisaremos más adelante, estamos obligados por la norma que requiere que interpretemos las disposiciones de la Sec. 13-101, *supra, liberalmente* en favor de la responsabilidad que

ésta impone. *Vargas Vargas v. Belthor Cáceres Corp.*, 90 D.P.R. 37 (1964).

## IV

La primera cuestión a dilucidar es, pues, si Bansander Leasing Corporation era el dueño del vehículo de marras cuando ocurrió el accidente.

Nuestro examen de esta primera cuestión tiene que comenzar necesariamente con lo dispuesto en la Sec. 1-123 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 323, que dispone expresamente que, para los fines de esta legislación especial, el dueño del vehículo es la "persona natural o jurídica que tenga registrado a su nombre un vehículo en el Departamento de Transportación y Obras Públicas". Conforme a esta disposición, no habría dudas de que Bansander Leasing Corporation era el dueño del vehículo en cuestión, puesto que estaba registrado a su nombre, a no ser porque, con relación a dicha disposición, hemos resuelto ya que ésta establece una presunción *rebatible* de titularidad. La presunción de pertenencia que surge de la inscripción puede ser controvertida mediante otra prueba, si ésta es "prueba fuerte que satisfaga plenamente la conciencia judicial". *Muñoz Meléndez v. Farmer*, 104 D.P.R. 297, 307 (1975). Véanse: *Pérez v. Concepción*, 104 D.P.R. 83 (1975); *Díaz Cáceres v. Berríos*, 100 D.P.R. 741 (1972); *Yordán v. Ríos*, 68 D.P.R. 259 (1948).

La situación típica u ordinaria para la impugnación de la presunción de pertenencia es aquella en la cual el vehículo aparece registrado a nombre de una persona como dueño, pero esa persona lo ha vendido a otra, quien no lo tiene inscrito todavía a su nombre. En tales casos, cabe cuestionar la presunción de propiedad que existe respecto al dueño anterior, en cuyo nombre el vehículo aún aparece inscrito. Pero, según hemos resuelto, esa impugnación sólo puede hacerse si la venta del vehículo se

formalizó bajo juramento ante un notario o ante algún funcionario expresamente autorizado por ley para tal fin. El mero traspaso por documento privado no es suficiente para impugnar la presunción. *Muñoz Meléndez v. Farmer*, supra. Hemos resuelto ya, pues, que la inscripción que aparece en el Departamento de Transportación y Obras Públicas establece una *fuerte presunción de titularidad dominical.*

En vista de la normativa antes reseñada, es necesario que procedamos ahora a indagar si hay algún fundamento suficiente para impugnar la fuerte presunción que existía en el caso ante nos de que Bansander Leasing Corporation era el dueño del vehículo en cuestión.

Debe destacarse inicialmente que, en el caso de marras, no se ha cuestionado la presunción de titularidad como sucede de ordinario. No se ha alegado aquí que el vehículo en cuestión pertenecía a otra persona porque había ocurrido una venta no inscrita de éste posterior a que el vehículo se registrase a nombre de Bansander Leasing Corporation. Más bien, la alegación formulada por la parte demandada recurrente es que Bansander Leasing Corporation *no era el dueño real del vehículo*, sino sólo su titular registral, puesto que dicha entidad conservaba únicamente un título formal con el único propósito de servir como garantía frente a un posible incumplimiento contractual por parte del arrendatario. Según la demandada recurrente, el arrendatario (*lessee*) es el dueño real del vehículo, debido a que es dicho arrendatario quien tiene el control de éste.

En efecto, la parte demandada recurrente pretende hacer una distinción entre el dueño real del vehículo y su "titular registral". Su planteamiento, sin embargo, no tiene fundamentos jurídicos. No hay nada en la Ley de Vehículos y Tránsito de Puerto Rico ni en el Código Civil que aplique aquí de manera supletoria, *Sucn. Evans v. Srio. de Hacienda*, 108 D.P.R. 713 (1979), o en nuestra jurisprudencia que permita hacer semejante distinción. Por el contrario, el

examen de las fuentes pertinentes de nuestro ordenamiento jurídico lleva indudablemente a la conclusión de que Bansander Leasing Corporation era sin dudas el dueño real del vehículo en cuestión. Se consolida así la fuerte presunción de titularidad dominical que establece la propia Ley de Vehículos y Tránsito de Puerto Rico.(³)

■ Por un lado, ya habíamos resuelto que en casos como el de marras "[l]a entidad financiera es la propietaria del bien hasta el fin del arrendamiento". *Meyers Bros. v. Gelco*, 114 D.P.R. 116, 121 (1983). En dicha decisión nos enfrentamos por primera vez a la llamada institución del *leasing*, es decir, del arrendamiento financiero, en un caso en que el contrato entre las partes era *esencialmente idéntico* al que tenemos ante nos ahora. En *Meyers Bros. v. Gelco*, supra, una persona había solicitado a una entidad financiera que comprase un vehículo de un proveedor para que se lo arrendase a dicho solicitante bajo determinadas condiciones. El solicitante seleccionó el automóvil directamente del proveedor y lo poseyó una vez formalizado el contrato de arrendamiento, sin intervención alguna de la entidad financiera. *Como en el caso ante nos ahora*, en *Meyers Bros. v. Gelco*, supra, existía una disposición contractual esencial que le daba al arrendatario la opción, al expirar el arrendamiento, de adquirir el vehículo por su valor residual o devolverlo a la entidad financiera. Como parte del ponderado examen que hicimos en *Meyers Bros. v. Gelco*, supra, de esta nueva institución jurídica, que caracterizamos como un contrato atípico, sui géneris, resolvimos con mucha deliberación *que la entidad financiera, en estos casos, es el dueño del vehículo.* Esa decisión nuestra, con la

---

(³) Cabe señalar que entre las diferentes jurisdicciones norteamericanas, donde el contrato de *leasing* se utiliza corrientemente, no existe consenso en cuanto a la controversia ante nos. Es decir, que existen jurisdicciones que le imponen responsabilidad como "dueño" al arrendador financiero y otras que no. Véanse: *Automobiles and Highway Traffic*, 7A *Am. Juris 2d* Sec. 649, págs. 880–881 (1980); *Anotación, Automobile Responsibility Statute—"Owner"*, 74 A.L.R.3d 739 (1976); 1 *The American Law of Torts* Sec. 4:7, pág. 563 (1983). En vista a dicha disparidad de criterios, no haremos mención adicional de dichas jurisdicciones en nuestra opinión.

que coinciden importantes comentaristas como Vidal Blanco,[4] y otros citados por el propio Bansander Leasing Corporation,[5] rige aquí. Desde 1983 —cuando resolvimos *Meyers Bros. v. Gelco*, supra— entidades como Bansander Leasing Corporation sabían, o debían saber, que en Puerto Rico el arrendador finaciero es jurídicamente el dueño del vehículo.

Más aún, el propio contrato de arrendamiento ante nos impide que se pueda reclamar que el arrendatario financiero, y no el arrendador, es el dueño real del vehículo. El contrato otorgado por Bansander Leasing Corporation con la arrendataria señalaba expresamente en su cláusula trece, en términos tajantes y sencillos, que Bansander Leasing Corporation era el dueño del vehículo, que la arrendataria no tenía título o interés de propiedad alguno sobre dicho vehículo y que el contrato entre ellos no era de compraventa, sino de alquiler. Conforme al principio rector del derecho contractual de que los acuerdos de los contratantes tienen fuerza de ley y deben cumplirse al tenor de éstos, Art. 1044 del Código Civil, 31 L.P.R.A. sec. 2994, Bansander Leasing Corporation era indudablemente el dueño del vehículo. Resolver lo contrario implicaría violentar el contrato en cuestión y relevar a Bansander Leasing Corporation de los términos de su propio contrato, cosa que los tribunales de justicia no podemos hacer. *García v. World Wide Entmt. Co.*, 132 D.P.R. 378 (1992); *Constructora Bauzá, Inc. v. García López*, 129 D.P.R. 579 (1991); *Hidalgo v. Depto. Servicios Sociales*, 129 D.P.R. 605 (1991); *Cervecería Corona v. Commonwealth Ins. Co.*, 115 D.P.R. 345 (1984); *Olazábal v. U.S. Fidelity, etc.*, 103 D.P.R. 448 (1975).

---

[4] C. Vidal Blanco, *El leasing: una innovación en la técnica de la financiación*, Madrid, Ed. Instituto de Estudios Fiscales, 1977, pág. 303.

[5] El Prof. Robert J. Maganuco ha señalado que "the finance lessor is actually the legal owner of the leased equipment". *Finance Lessor's Liability For Personal Injuries*, 1974 U. Ill. L.F. 154 (1974).

■ Por otro lado, no cabe duda de que Bansander Leasing Corporation es el dueño del vehículo conforme a los principios fundamentales que rigen el derecho de propiedad en Puerto Rico. Según conocidas normas de Derecho Civil, la propiedad de una cosa reside siempre en quien tenga sobre ella el dominio inmediato, sin que importe que otra persona use o disfrute de dicha cosa de alguna manera. Art. 283 del Código Civil, 31 L.P.R.A. sec. 1114. La posesión que de un bien pueda tener un arrendatario no le da a éste título de propiedad, debido a que dicho bien pertenece a quien tiene inmediato dominio de éste. *Banco Territorial y Agrícola v. Arvelo*, 7 D.P.R. 566 (1904). Ese dominio incluye la facultad que tiene el titular dominical de aprovecharse de la cosa que le pertenece, obteniendo frutos o rendimientos de ella. También incluye la facultad del titular de realizar actos jurídicos para disponer de su derecho, enajenándolo o sometiéndolo a gravámenes o limitaciones. Art. 280 del Código Civil, 31 L.P.R.A. sec. 1111; *Soc. Gananciales v. G. Padín Co., Inc.*, 117 D.P.R. 94 (1986); J.L. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1971, págs. 167–168. En el caso ante nos, el hecho de que la arrendataria tuviese la posesión del vehículo no la convertía en su dueña. La parte que ejerció o ejercía claros actos de dominio[6] fue el arrendador financiero, quien compró el vehículo al distribuidor de automóviles; quien lo registró como propietario en el Departamento de Transportación y Obras Públicas; quien lo alquiló; quien fijó condiciones restrictivas respecto a su uso, tales como la que vedaba su utilización para fines comerciales; a quien había que devolver el vehículo al terminar el arrendamiento si el usuario no se lo compraba entonces por su valor residual; a quien pertenecían cualesquiera reemplazos, cambios o mejoras hechas al ve-

---

[6] Nos referimos a los actos dominicales tanto del arrendador financiero original, Leaseway of Puerto Rico, Inc., como a su sucesor, Bansander Leasing Corporation.

hículo por el arrendatario, y quien a su discreción podía tomar posesión del vehículo en caso de que el arrendatario incumpliera con cualquiera de los términos del contrato. Vistos los actos de dominio del arrendador financiero, no puede concluirse jurídicamente que su título era puramente formal, como alegó Bansander Leasing Corporation.

 Finalmente, debemos considerar los propósitos de la Sec. 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, y su efecto sobre el asunto ante nos. Por mandato legislativo, la consideración principal que debe atenderse al fijar la responsabilidad civil por daños causados al usarse el vehículo es la "debida protección de la comunidad". Informe de la Comisión de lo Jurídico de la Cámara de Representantes en torno al P. de la C. 842 (13 Diario de Sesiones, T. 3, págs. 1312–1313 (1960)). Reiteradamente hemos señalado que la disposición aludida "se adoptó para dar mayor garantía a las personas que son víctimas de accidentes en nuestras vías públicas de que los daños que sufran les sean reparados". *Rivera Otero v. Casco Sales Co.*, 115 D.P.R. 662 (1984); *González v. Seatrain Lines of P.R.*, 106 D.P.R. 494 (1977); *Cordero Santiago v. Lizardi Caballero*, 89 D.P.R. 150 (1963). El propósito legislativo claro fue el de "trasladar la carga de los daños a aquella parte que está en mejor posición para soportarla". *Rivera Otero v. Casco Sales Co.*, supra. Véase *McGee Quiñones v. Palmer*, 91 D.P.R. 464 (1964). Por eso, "la interpretación y aplicación de la norma [que establece la Sec. 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*,] debe responder al propósito primario de proteger a los damnificados inocentes". *McGee Quiñones v. Palmer*, supra, pág. 466. En vista del incuestionable mandato legislativo de facilitar y asegurar la compensación a quienes sean víctimas de accidentes automovilísticos, es claramente improcedente la alegación de la recurrente. Se frustraría el preciso mandato legislativo si concluyésemos que Bansander Leasing Corporation no era el dueño del

vehículo en cuestión. Privaríamos a los damnificados de una fuente pertinente para la indemnización de sus daños, lo que sería contrario a la intención legislativa, cuyo mandato persigue *ampliar dichas fuentes, no reducirlas*. Bansander Leasing Corporation disfrutaba de medios suficientes para responder de los daños sufridos por las víctimas del accidente en cuestión, puesto que dicha entidad estaba adecuadamente asegurada para encarar situaciones como las de marras, conforme a una póliza a su favor que el propio arrendador financiero le exigió obtener a la arrendataria del vehículo. En tales circunstancias, acceder a la pretensión de la recurrente —de que Bansander Leasing Corporation no es el "dueño real"— equivaldría a hacer caso omiso del mandato legislativo de dar mayores garantías de indemnización a las víctimas de accidentes automovilísticos. La intención legislativa que informa la Sec. 13-101, *supra*, pues, viene a consolidar el resultado que las otras fuentes de derecho ya examinadas exigen.

Por todos los fundamentos expuestos resolvemos que, para los fines de la Ley de Vehículos y Tránsito de Puerto Rico, Bansander Leasing Corporation, como arrendador financiero, era el dueño del vehículo en cuestión cuando ocurrió el accidente.

## V

Para completar el análisis de la cuestión ante nos, sólo nos falta resolver si la persona que tenía el control del vehículo([7]) había obtenido su posesión por autorización del dueño.

---

([7]) Nótese que por los propios términos de la Sec. 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1751, el hecho de tener control sobre un vehículo *no* es determinativo, *de modo alguno*, de su titularidad. Al contrario, dicha sección dispone que el control del vehículo no estará en manos del dueño, sino en manos de la persona a quien el dueño le autorizó la *posesión* del vehículo. Por ello, es claramente inmeritorio e irrelevante el argumento de Bansander Leasing Corporation de que no era el dueño real porque no tenía control del vehículo.

■ Según ya hemos señalado, la Sec. 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, fija como condición para la responsabilidad vicaria que le impone al dueño de un vehículo que dicho dueño haya autorizado su posesión. Literalmente dispone esa sección que el dueño será responsable

> ... cuando el referido vehículo ... esté bajo el control ... de cualquier persona que, con el fin principal de operarlo ... obtenga su posesión mediante la autorización ... del dueño. 9 L.P.R.A. sec. 1751.

■ Si se examina este lenguaje cuidadosamente, se observará que la posesión que tiene que estar autorizada no es la de cualquier persona que conduzca el vehículo, sino solamente la de aquella *bajo cuyo control se encuentre el vehículo*; que en este caso sería su arrendatario. Así lo resolvimos en *Cordero Santiago v. Lizardi Caballero*, supra, en el cual fundamentamos nuestra interpretación no sólo en los términos literales de la disposición aludida, sino también en su historial legislativo. En *Cordero Santiago v. Lizardi Caballero*, supra, al resolver que la mera posesión voluntariamente autorizada del vehículo era suficiente para imponer responsabilidad civil a su dueño, establecimos que no es todo *uso concreto* del vehículo lo que tiene que estar autorizado, sino sólo su *posesión* por la persona bajo cuyo control está dicho vehículo. En *McGee Quiñones v. Palmer,* supra, reafirmamos ese principio. Una vez el dueño hace o dispone la entrega del vehículo voluntariamente, éste es responsable por los daños que se causen mediante el uso de dicho vehículo, aunque el consentimiento del dueño se concediese sólo para un propósito limitado y el causante del daño se haya apartado de tal propósito. *Es la posesión autorizada, no el uso autorizado, lo que crea la responsabilidad civil del dueño.* El uso no autorizado sólo da lugar a una acción del dueño contra quien tiene la posesión por violar los términos de ésta. No releva al dueño de su responsabilidad frente a los damnificados por ese uso no autorizado. *McGee Quiñones v. Pal-*

*mer*, supra, pág. 468; *Cordero Santiago v. Lizardi Caballero*, supra, págs. 157–158 y 162–163.

Conforme a lo anterior, la cuestión ante nos se reduce a determinar si el señor Rodríguez González, arrendatario del vehículo en cuestión, obtuvo su posesión con autorización. La respuesta es obviamente afirmativa.

Nótese, en primer lugar, que el propio contrato suscrito por Bansander Leasing Corporation con el arrendatario establece que éste tendrá derecho a la *posesión* y operación del vehículo. Igualmente, en dicho contrato el arrendador autoriza la entrega del vehículo al arrendatario. Estas y otras disposiciones del contrato en cuestión aluden expresamente al derecho principal que el arrendatario obtuvo del dueño del vehículo, que es el derecho a su posesión. Dicho contrato no tendría sentido o validez alguna si Bansander Leasing Corporation no hubiese autorizado al arrendatario a poseer el vehículo en cuestión. El traspaso autorizado precisamente de tal posesión fue la causa del contrato.

▮▮▮▮▮▮ Como se sabe, la posesión es un hecho jurídico, a la vez que un derecho. M. Albaladejo, *Concepto y naturaleza de la posesión*, en *Derecho Civil*, 6ta ed., Barcelona, Ed. Bosch, 1989, T. III, Vol. 1, págs. 35–43. Consiste de la tenencia de una cosa o el disfrute de un derecho por una persona. Art. 360 del Código Civil, 31 L.P.R.A. sec. 1421. Se adquiere por la ocupación material de la cosa o por quedar la cosa sujeta a la acción de la voluntad de quien tiene derecho a poseerla. Art. 367 del Código Civil, 31 L.P.R.A. sec. 1441. Es por ello que la posesión puede adquirirse por la misma persona que va a disfrutarla, por su representante legal o por su mandatario. Art. 368 del Código Civil, 31 L.P.R.A. sec. 1442. Es por ello, también, que quien tiene la posesión de una cosa no la pierde por actos de disfrute o tenencia de otros que el poseedor ha tolerado. Art. 373 del Código Civil, 31 L.P.R.A. sec. 1447; *Trucharte v. Figueroa*, 24 D.P.R. 310 (1916). Es por ello,

además, que el poseedor de una cosa no la pierde, mientras se halle bajo su poder, aunque éste ignore su paradero. Art. 390 del Código Civil, 31 L.P.R.A. sec. 1476. Y es por ello que la posesión se puede ejercer en la cosa por la persona que la tiene y la disfruta o por otra en su nombre. Art. 361 del Código Civil, 31 L.P.R.A. sec. 1422. Abundando sobre el particular, en lo pertinente a la situación ante nos, la posesión, aun como poder o señorío de hecho sobre una cosa, no requiere que se tenga poder físico actual sobre ésta, sino solamente que dicha cosa se halle bajo el señorío efectivo de la voluntad de quien ostenta la posesión. La doctrina considera con claridad el criterio de la pura tenencia material como insuficiente por sí solo para determinar que existe la posesión, a la vez que afirma que el contacto corporal no es necesario siempre para que la posesión se configure. Albaladejo, *op. cit.*; D. Espín Cánovas, *Manual de Derecho Civil Español*, 6ta ed., Madrid, Ed. Rev. Der. Privado, 1983, Vol. III, págs. 16–38; J.R. Lacruz Berdejo, *Elementos de Derecho Civil*, Barcelona, Ed. Bosch, 1979, T. III, Vol. 1, págs. 26–30 y 47–52.

En vista de la naturaleza de la posesión, como la configura el Derecho Civil, Leaseway of Puerto Rico, Inc., antecesor jurídico de Bansander Leasing Corporation, como dueño original del vehículo con indiscutible derecho a su posesión podía transferirla al arrendatario aunque no la hubiese ejercido materialmente antes. Es decir, Leaseway of Puerto Rico, Inc. tenía plena capacidad para comprarle el vehículo al distribuidor e inmediatamente autorizar que su posesión quedase en manos del arrendatario aunque la primera nunca hubiese ocupado como tal el vehículo materialmente. El arrendatario adquiría así la posesión del vehículo por la voluntad de quien tenía derecho a poseerlo (Art. 367 del Código Civil, *supra*) y el arrendatario entonces ejercía su posesión a nombre de Leaseway of Puerto Rico, Inc. (Art. 361 del Código Civil, *supra*). Esa es precisamente la naturaleza jurídica del arrendamiento, en

la cual el arrendatario posee el bien a nombre de su dueño. *Lluberas v. Mario Mercado e Hijos*, 75 D.P.R. 7 (1953). Posteriormente, Leaseway of Puerto Rico, Inc. transfirió sus derechos a Bansander Leasing Corporation y ésta asumió las condiciones del contrato de arrendamiento financiero otorgado por Leaseway of Puerto Rico, Inc. con el arrendatario. Al asumir las condiciones del contrato autorizó que la posesión del vehículo permaneciera en manos del arrendatario.

Resolvemos, pues, que el arrendatario del vehículo en el caso de marras tenía su posesión debidamente autorizada por Bansander Leasing Corporation.

## VI

Antes de concluir la consideración del asunto ante nos, es menester atender un planteamiento de la recurrente que reviste especial importancia por razón del vigoroso y creciente uso que se hace del arrendamiento financiero en el tráfico comercial contemporáneo. Aduce la recurrente que si se responsabiliza a los arrendadores financieros de vehículos, como dicha entidad, por los daños causados por los que operan el vehículo, ello habrá de incrementar los costos de ese tipo de transacción, lo que alegadamente "conducirá a una reducción en el número de compañías dispuestas a mantenerse en el negocio".

Se nos plantea, además, que una decisión contraria a Bansander Leasing Corporation puede ser adversa a un mecanismo financiero que tiene conveniencia pública. Es decir, que el aumento en los costos resultaría en última instancia en una penalidad para los consumidores.

El planteamiento anterior, sin embargo, no está avalado por datos o análisis económico alguno que apoye lo alegado. La recurrente no explica con fundamentos por qué la decisión aludida incrementaría los costos del arrendamiento financiero tan adversamente que limitaría su uso

en el tráfico comercial. Por el contrario, existen razones para cuestionar la validez de tal planteamiento. Nótese que estos contratos de arrendamiento financiero son muy convenientes a la entidad arrendadora. Como la propia recurrente admite en su alegato, del contrato de *leasing* sólo surgen obligaciones para el usuario. Las obligaciones del arrendador se transfieren al usuario, quien asume todos los riesgos de la propiedad, excepto los del financiamiento. La compra del marbete, el pago de las inspecciones del vehículo, la responsabilidad del mantenimiento y las reparaciones del vehículo, todas permanecen en el usuario, al igual que otros gastos similares. Más aún, el costo de la responsabilidad civil que tiene el arrendador financiero respecto a los daños públicos causados por el uso negligente del vehículo lo asume ya el propio arrendatario, quien está obligado por el contrato de arrendamiento financiero a adquirir y pagar una póliza de seguro para proteger al arrendador. Cabe señalar, además, que como titular de los vehículos alquilados, el arrendador financiero los incluye como parte de sus activos en los estados financieros, lo que le provee mayor solidez y liquidez financiera y le permite aumentar tanto su capacidad prestataria como sus propias inversiones.

El argumento de la recurrente, además, es contrario a lo que parece ser la posición de la industria sobre el asunto ante nos. Desde hace ya varios meses la Asamblea Legislativa considera un proyecto de ley dirigido precisamente a regular el contrato de arrendamiento financiero en Puerto Rico. Véanse: P. de la C. 702 y P. del S. 462 de 23 de mayo y 23 de septiembre de 1993, respectivamente. En una de las vistas públicas celebradas en torno al proyecto el 15 de marzo de 1994, compareció el Vicepresidente Ejecutivo de la Asociación de Bancos de Puerto Rico a presentar la posición sobre el particular de varias ins-

tituciones que se dedican al arrendamiento financiero,(⁸) incluyendo a la propia demandada recurrente Bansander Leasing Corporation. Expresó concretamente que deponía para formular "las preocupaciones de la industria en torno a la legislación propuesta". Recalcó que era menester asegurar que la legislación contemplada no menoscabara la capacidad financiera y la flexibilidad contractual que la industria "necesita para poner a disposición de sus usuarios el mecanismo del arrendamiento financiero".

El funcionario de la Asociación de Bancos de Puerto Rico presentó objeciones y propuso varias enmiendas al proyecto de ley. Sin embargo, *no se opuso de modo alguno al Art. 7 del P. de la C. 702*, supra, pág. 6, *que dispone con claridad que el arrendador financiero es el dueño del bien arrendado, y que establece que el arrendatario no advendrá nuevo titular del mismo hasta tanto haya finalizado el término del "lease" y se haya realizado el pago del valor residual acordado.* Más aún, no sólo no se presentó objeción alguna al reconocimiento legislativo de la titularidad dominical de la institución financiera, sino que, además, con relación a varias de las recomendaciones propuestas por la industria, se presumió y se hizo hincapié de que, en efecto, el dueño del bien arrendado lo es la institución financiera. Véanse las págs. 5, 8, 10, 12, 13, 16, 17, 18 y 20 de la Ponencia del Sr. Arturo Carrión.

Parecería, pues, que la industria, y Bansander Leasing Corporation en particular, admite e interesa la titularidad sobre el vehículo arrendado y no entiende que ello apareja costos o riesgos no considerados ya en el mecanismo del arrendamiento financiero, todo ello contrario a lo alegado por la recurrente en este caso.

De cualquier modo, aun si hubiese algún costo adicional como ha alegado la recurrente sin demostrarlo, la cuestión de si ese costo, supuestamente adverso al tráfico comercial,

---

(⁸) Expresó que representaba a Oriental Leasing, Popular Leasing, Bansander Leasing Corporation y VELCO.

debe dar lugar a que se exima al arrendador financiero de la referida responsabilidad civil, no es una cuestión que nos competa resolver. Se trata más bien de un planteamiento respecto a cuál debe ser la política económica sobre el particular. Éste le toca decidirlo a las ramas políticas del Gobierno. Ellas son las que tienen primordialmente la autoridad para determinar si el arrendador financiero debe estar exento o no del régimen de la Ley de Vehículos y Tránsito de Puerto Rico. A este Foro sólo le corresponde resolver, como aquí lo hacemos, que en circunstancias como las de marras, bajo el derecho vigente en Puerto Rico, los arrendadores financieros como Bansander Leasing Corporation son responsables civilmente de los daños causados por la conducción negligente de un vehículo de motor, conforme a lo dispuesto por la Sec. 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*.

## VI

Por los fundamentos expuestos, *se expide el recurso y se dictará sentencia para confirmar la de instancia.*

El Juez Asociado Señor Rebollo López concurrió con opinión escrita. El Juez Asociado Señor Negrón García disintió con opinión escrita, a la cual se unió el Juez Presidente Señor Andréu García.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

A pesar de que no podemos suscribir *todos* los fundamentos que se aducen en la opinión mayoritaria en apoyo del resultado a que se llega en la misma, *somos del criterio que dicho resultado es uno que resulta ser obligatorio en derecho.* Esto es, que las compañías o corporaciones que se

dedican al financiamiento de vehículos de motor a través del contrato de arrendamiento financiero (*leasing*), que común y corrientemente es utilizado en la industria, son responsables por los daños y perjuicios que se le causan a un tercero, en la operación de dicho vehículo, mientras el mismo sea operado por el arrendatario de dicho vehículo o por persona debidamente autorizada por éste último.

Dados los hechos particulares del presente caso, *no* cabe, desde un punto de vista jurídico, otra conclusión. Ello en vista, *en primer lugar*, de las claras disposiciones de la Sec. 1-123 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 323, a los efectos de que el dueño de un vehículo de motor en particular lo es la "persona natural o jurídica que tenga registrado a su nombre un vehículo en el Departamento [de Transportación y Obras Públicas]"; *en segundo término*, del hecho que Bansander Leasing Corporation —el cual aparece registrado como dueño del vehículo accidentado en el mencionado Departamento— no vendió, o traspasó, el título del vehículo en controversia a persona alguna con anterioridad a la fecha del accidente; *en tercer lugar*, en vista de los propios términos del contrato que otorgara Bansander Leasing Corporation con el arrendatario de dicho vehículo; *en cuarto término*, en vista de las, igualmente, claras disposiciones de la Sec. 13-101 de la citada Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1751, a los efectos de que el dueño de un vehículo de motor será responsable de los daños y perjuicios que se le causa a un tercero, en la operación de dicho vehículo, mientras el mismo es operado por persona autorizada para así hacerlo; y, *por último*, a la luz de la norma estatutaria, y jurisprudencial, a los efectos de que cuando los términos de un estatuto son claros y susceptibles de una interpretación inequívoca, según el *significado corriente* de sus palabras, *se debe atender a su letra*.

Contrario a lo que se expone por el Juez Asociado Señor Negrón García, en la opinión disidente que emite, la posi-

ción mayoritaria, para llegar al resultado por él criticado, *no* incurre en un acto de legislación judicial; la Mayoría *meramente* se limita a seguir la letra de los estatutos, aplicables y pertinentes al asunto en controversia, y la fraseología del contrato otorgado por las partes. *Dicho de otra forma, la que incurre, o intenta incurrir, en un claro acto de legislación judicial lo es la citada posición minoritaria al proponer un resultado contrario a, e incompatible con, la clara letra de la ley.* Ello, sin embargo, le corresponde hacerlo a la Asamblea Legislativa; la cual es la *única* que tiene el poder para, si es que así lo entendiera procedente, eximir de este resultado obligatorio a las compañías que se dedican en Puerto Rico al financiamiento de vehículos de motor a través del contrato de arrendamiento financiero (*leasing*).

El legislador, sin embargo, posiblemente ha entendido —por lo menos, hasta el presente— que dichas compañías *no* deben tener *los derechos* a que, como dueños, son acreedores por ley, *sin tener, igualmente, las obligaciones* que ello jurídicamente conlleva. *Después de todo, debe mantenerse presente que, de ordinario, a ninguna persona se le concede un derecho sin que, a la misma vez, se le exija una responsabilidad en relación con el ejercicio del mismo.*

— O —

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se une el Juez Presidente Señor Andréu García.

Hoy la mayoría decide que Bansander Leasing Corporation, por su *sola* condición de arrendador financiero (*financial lessor*), es responsable de los daños causados por el

manejo negligente de un vehículo de motor.([1]) *Discrepamos.*

## I

*Primero,* sabido es que la inscripción del vehículo en los registros del Departamento de Transportación y Obras Públicas sólo crea una presunción *rebatible* de titularidad —*Muñoz Meléndez v. Farmer,* 104 D.P.R. 297 (1975); *Pérez v. Concepción,* 104 D.P.R. 83 (1975); *Díaz Cáceres v. Berríos,* 100 D.P.R. 741 (1972); *Yordán v. Ríos,* 68 D.P.R. 259 (1948)— esto es, "evidencia *prima facie* de que tal persona es la *verdadera dueña* del vehículo". (Énfasis suplido.) *Hernández Cañete v. Proc. Montebello, Inc.,* 114 D.P.R. 289, 292 (1983).

En el caso de autos, Bansander Leasing Corporation no era la persona a quien el legislador contempló imponerle la responsabilidad; *su titularidad es únicamente formal.* Son hechos no contradichos que Bansander Leasing Corporation *no* tenía posesión ni control alguno para usar o disponer físicamente del vehículo. Para lograrlo, salvo una en-

---

([1]) La Ley de Vehículos y Tránsito de Puerto Rico contiene dos (2) presunciones pertinentes, íntimamente relacionadas, para la recta y justiciera solución del caso. La primera dispone:

"El dueño de cualquier vehículo de motor será responsable de los daños y perjuicios que se causen mediante la operación de dicho vehículo, interviniendo culpa o negligencia, cuando el referido vehículo sea operado o esté bajo el control físico y real de cualquier persona que, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona, obtenga su posesión mediante la autorización expresa o tácita del dueño. *En todo caso se presumirá, salvo prueba en contrario, que la persona que opera o tiene bajo su dominio o control un vehículo de motor, ha obtenido su posesión con la autorización de su dueño, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona.*

"La persona por cuya negligencia haya de responder el dueño de un vehículo de acuerdo con las disposiciones del párrafo anterior vendrá obligada a indemnizar a éste." (Énfasis suplido.) Sec. 3-101 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1751.

La segunda —de génesis jurisprudencial— es la dimanante de la definición de "dueño", a saber, "cualquier persona natural o jurídica que tenga registrados a su nombre un vehículo". Sec. 1-123 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 323.

trega voluntaria, estaba obligado a iniciar un procedimiento de reposesión en los tribunales contra el arrendatario Edwin Rodríguez González. Si para obtener el control y uso efectivo del automóvil, Bansander Leasing Corporation tenía que seguir el riguroso proceso judicial de reposesión, ¿puede decirse, en justicia, que ejercía control sobre el vehículo y, por lo tanto, debía responder? El poder de controlar y de usar un vehículo, ¿no es precisamente la característica que está latente en la premisa que anima la Sec. 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1751? *Un titular tan diluido y distante del control y uso real de un vehículo de motor, ¿es el dueño a quien el legislador quiso imponer responsabilidad absoluta?*

La mayoría, al contestar en la afirmativa estas preguntas, olvida que toda presunción controvertible, a priori "crea un estado de probabilidad" o de "presunta verdad". *Martínez Cortés v. Tribunal Superior*, 98 D.P.R. 652, 656 (1970); *Quiñones Carrasquillo v. Quiñones*, 42 D.P.R. 307, 312 (1931). En el caso de la Sec. 13-101, *supra*, la configuración fáctica medular, que avala la presunción, es que el dueño de un automóvil, de ordinario, ejerce por sí o terceros autorizados actos de dominio, uso y control sobre el vehículo. Si algo revela el caso de autos es la inaplicabilidad de esa "presunta verdad", pues Bansander Leasing Corporation nunca ha ejercido ningún acto de control, dominio o uso del vehículo; sólo el arrendatario Rodríguez González lo hizo con absoluta exclusividad.

## II

*Segundo*, en *Cordero Santiago v. Lizardi Caballero*, 89 D.P.R. 150, 158 (1963), detectamos que "el propósito que animó a los autores de la medida fue precisamente garantizar a cualquier persona la reparación de los daños causados mediante la operación culposa o negligente de un vehí-

culo de motor, cuando la posesión del mismo fue entregada voluntariamente por su dueño".

Este interés legislativo no queda menoscabado porque no lo apliquemos al arrendador financiero (*financial lessor*). Bastaría señalar que esa salvaguarda se satisface simplemente con insertar en este tipo de contrato la cláusula típica —en el caso de autos, la novena— que requiere del arrendatario un seguro de responsabilidad. Como parte del canon mensual, el arrendatario Rodríguez González pagaba un seguro que cubría lesiones a terceras personas y daños a la propiedad ajena.

Coincidimos con Bansander Leasing Corporation en que si bien mantenía la titularidad registral del vehículo, ello era una *formalidad* necesaria sólo para proteger su financiamiento y el fiel cumplimiento de las obligaciones contractuales del arrendatario Rodríguez González. Ciertamente, Bansander Leasing Corporation no le escogió el vehículo cuando lo compró para fines exclusivos del financiamiento; en ningún momento tuvo su posesión, uso o control; tampoco mantenimiento; *menos, influencia decisoria o control alguno sobre los actos u omisiones del arrendatario Rodríguez González o de las otras personas a quienes él le entregó su uso. La tesis mayoritaria ignora esta realidad.* ¿Cómo pueden apuntalarla en la *ficción* de que Bansander Leasing Corporation ejercía actos de dominio y control sobre el vehículo? Opinión mayoritaria, pág. 841. Según el estado de derecho vigente, Bansander Leasing Corporation ha demostrado satisfactoriamente que la mera titularidad registral no es un fundamento válido para responsabilizarle.

## III

Tercero, en términos de *equivalencia funcional*, el arrendamiento financiero cumple igual propósito que una venta condicional, esto es, *sirve para facilitar el financiamiento*

al proveer, como garantía del negocio, la posibilidad de recobrar el automóvil. Y claro está, sin esa posibilidad perdería eficacia el arrendamiento como contrato esencialmente financiero.

Ambas figuras comparten un esquema tripartita en el cual la entidad que provee el financiamiento juega un papel importante. Más aún, el *paralelismo* entre ambos contratos lo encontramos plasmado en nuestro derecho positivo. Así, la Ley de Ventas a Plazos y Compañías de Financiamiento, 10 L.P.R.A. sec. 731 *et seq.*, en lo pertinente, define *contrato de venta al por menor a plazos* o *contrato* como "cualquier acuerdo convenido en Puerto Rico, incluyendo una hipoteca sobre bienes muebles, *contrato de venta condicional* o cualquier otro documento evidenciario de un acuerdo para pagar el precio de venta al por menor a plazos de mercancía o servicios en el transcurso de un período determinado de tiempo. *También incluye cualquier arrendamiento de mercancía mediante el cual el arrendatario convenga en pagar como compensación por el uso de la mercancía una suma sustancialmente equivalente a su valor, o en exceso de éste, y por el cual se convenga que el arrendatario estará obligado a, o tiene la opción de, convertirse en dueño después de cumplir con los términos del contrato*". (Énfasis suplido.) 10 L.P.R.A. sec. 731(6).

Es obvio que el texto subrayado presenta un arrendamiento financiero como el que nos ocupa:

La cuota de alquiler en el caso de arrendamiento financiero representa usualmente una forma de distinguir la figura. La cuota suele constar de tres componentes: la amortización del costo del equipo, los intereses y demás cargas financieras, y la utilidad o beneficio. El primer componente lleva a la fijación, por un período irrevocable, de una suma que cause generalmente la amortización total del bien a la conclusión del compromiso. El monto de los tres componentes puede fluctuar conforme el caso. M. Gutiérrez Viguera, *op. cit.*, pág. 80; D. Crémieux-Israel, *Leasing et Crédit-Bail Mobiliers*, París, Ed. Dalloz, 1975, págs. 30–31.

La entidad financiera es la propietaria del bien hasta el fin del arrendamiento. El usuario goza generalmente de una triple opción al expirar el término irrevocable: comprar el bien por su valor residual, normalmente fijado en el contrato; realquilar el equipo bajo nuevas bases, a la luz de su valor residual; o devolver la propiedad a la entidad financiera. *Meyers Bros. v. Gelco*, 114 D.P.R. 116, 120–121 (1983).

Aunque, en rigor técnico, se admita que los contratos de venta condicional y arrendamiento financiero son diferentes en sus aspectos fundamentales, en particular en lo concerniente al propósito del financiamiento y las ejecuciones en la práctica de los actos de dominio y control del vehículo, son comparables *únicamente* con las prerrogativas inherentes de todo propietario. Ello nos lleva a concluir que bajo la Sec. 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, el arrendatario financiero es el "verdadero dueño" responsable.

En el "leasing" financiero el "lessor" prácticamente no tiene relación alguna con el proveedor del objeto, pues no es él quien lo procura. Aquí el "lessee" se encarga de buscar el equipo que desea y su proveedor o fabricante, acude luego al "lessor" y le indica su selección y las especificaciones particulares. El "lessor" adquiere (compra) el equipo y el proveedor lo entrega directamente al "lessee". Como vemos la ingerencia del financiador se limita a proveer el dinero y retener la titularidad del equipo. Este alejamiento en la transacción ha motivado, como dijimos antes, que los tribunales en los Estados Unidos lo hayan eximido de responsabilidad en variadas ocasiones[2]

---

[2] Cónsono con esta lógica decisional, en *Lee v. Ford Motor Co.*, 595 F. Supp. 1114 (D.C. 1984), el arrendador de un automóvil provisto a una agencia federal mientras era reparado uno de los vehículos objeto del contrato de arrendamiento entre la agencia y la compañía arrendadora, no fue considerado dueño bajo la Ley de Tránsito.

Al así resolver, señaló el Tribunal de Distrito para el Distrito de Columbia:

"Así, hay precedentes contundentes para la premisa de que la persona que detenta el título legal de un vehículo no será siempre considerada la 'dueña' bajo la Ley de Responsabilidad de Seguridad de Vehículos de Motor. En su lugar, al observar el propósito de la Ley, los tribunales 'colocan la responsabilidad' sobre la persona en una posición ... para permitir o impedir el uso del vehículo...' *Mason*, 121 F.2d, pág. 35.

"En este caso, no se disputa que Ford carezca de 'dominio y control' sobre el vehículo en cuestión. El carro había sido provisto a la FCA por Ford, mientras uno de los vehículos bajo un arrendamiento a largo término entre las partes era reparado...

(Sawyer v. Pioneer Leasing Corp., 428 S.W. 2d. 46, (1968)). Esta falta de responsabilidad será la mayor diferencia con el "leasing" operativo y con otras figuras contractuales afines. Algo similar ocurre en España, aunque no exista allí legislación al efecto. Nos dice Cuesta Rute:

> "Ni la destrucción de la cosa le perjudica ni el hecho de que quede anticuada le alcanza tampoco, porque el contrato se pacta por un tiempo rígido de duración que no se altera lo más mínimo por esa circunstancia. La empresa de 'leasing' sólo toma los riesgos financieros, y no deja de ser significativo que se señale como un riesgo extraordinario que pueda llegar a recobrar la cosa de manos del usuario." R. Avilés Pérez, *El contrato de leasing en Puerto Rico*, 86 Rev. Der. Pur. 231, 241 (1982–1983).

## IV

*Cuarto*, no estamos solos en este disentir. Coincidimos con la mayoría del Tribunal en cuanto a que algunas jurisdicciones estadounidenses, en casos similares, han impuesto responsabilidad a los arrendadores financieros. Compartimos la visión justiciera contraria que considera como criterio rector si el arrendador financiero ejercía control real sobre el vehículo, esto es, *tenía la facultad inmediata de permitir o impedir su uso*.[3]

Cuando el arrendamiento ha sido durante períodos cortos, la tendencia es a imponer responsabilidad al arrendador financiero; mas en casos de arrendamientos por largo tiempo se ha calificado su titularidad como sólo un medio

---

Bajo el arrendamiento el título permanecía en Ford, pero la autoridad para controlar y operar los vehículos fue dada al arrendatario, FCA-Ford no tenía el derecho inmediato para controlar el uso del vehículo al momento del accidente. Mientras Ford 'consintió' a la operación de sus carros por empleados de FCA, dicho consentimiento en blanco, que es la esencia de un contrato de arrendamiento, no pone a Ford en la posición ... de permitir o impedir el uso del vehículo... en cualquier caso. Cf. *Johnson v. Keyes*, 201 A. 2d, a la pág. 26. Es este inmediato derecho de control, como un incidente de dominio, el foco de la ley en cuestión. Dada la posición de Ford no puede ser considerado como un 'dueño' bajo la Ley de Responsabilidad de Seguridad de Vehículos de Motor." (Traducción nuestra.) *Lee v. Ford Motor Co.*, supra, pág. 1116.

[3] Para una interesante discusión de la jurisprudencia más importante sobre el tema, véase Anotación, *Who is "Owner" within Statute Making Owner Responsible for Injury or Death Inflicted by Operator of Automobile*, 74 A.L.R.3d 739 (1976).

de garantía de su crédito, no sujeto a responsabilidad vicaria. Véase Anotación, *Who is "Owner" within Statute Making Owner Responsible for Injury or Death Inflicted by Operator of Automobile,* 74 A.L.R.3d 739, 755–757 y 766–767 (1976).[4]

Es lógico dar tratamientos jurídicos distintos a ambos tipos de arrendamiento. En los que son por períodos cortos de tiempo, usualmente durante varios días, el dueño arrendador mantiene posesión del vehículo y le provee el mantenimiento necesario, además de pagar los derechos y tablillas que requiere el Gobierno. Es por el control que retiene sobre el vehículo que no se le puede liberar de responsabilidad.

Distinta, sin embargo, es la situación en arrendamientos durante períodos prolongados de tiempo, como en el caso ante nos, en los cuales el arrendatario asume el costo y los riesgos del equipo, así como las obligaciones relativas al mantenimiento, reparaciones y obtención de seguros, además de que en el contrato usualmente se exonera de responsabilidad a la compañía arrendadora, tal como ocurrió en el caso de marras.

## V

*Finalmente,* no es persuasivo el argumento mayoritario fundado en que la posición de Bansander Leasing Corpora-

---

[4] Aunque no es determinante, no podemos descartar la lógica de "[s]i se le encontrara responsable, el arrendador financiero presumiblemente aumentaría el precio en el mercado de este 'producto'. Al aumentar el precio del arrendamiento financiero, disminuiría el atractivo para los arrendatarios que utilizan este método de financiamiento. Reconociendo que la retención de los arrendamientos financieros a más bajo costo, depende parcialmente de la minimización de los riesgos de responsabilidad para los arrendadores, los arrendatarios estarían motivados a hacer mayores esfuerzos para corregir defectos que pudieran causar que los arrendadores incurrieran en responsabilidad. No obstante, es muy dudoso que esta motivación pudiera ser mayor que el efecto disuasivo que esta posibilidad de responsabilidad directa del arrendatario presumiblemente pudieran tener sobre ellos. Por tanto, la imposición de responsabilidad en el arrendador financiero no tendría un efecto beneficioso sustancial sobre la seguridad de la actividad que es financiada". (Traducción nuestra.) R.J. Maganuco, *Finance Lessor's Liability for Personal Injuries,* 1974 U. Ill. L.F. 154, 165–166 (1974).

tion es contraria a la asumida en la industria, según expuesta por la Asociación de Bancos de Puerto Rico en las vistas públicas de 15 de marzo de 1994, al debatirse un *"proyecto de ley"* dirigido específicamente a regular el contrato de arrendamiento financiero.

Como norma de hermenéutica, es de dudosa validez usar la discusión de un *proyecto* que ni siquiera es "ley".

La decisión mayoritaria es una labor de inteligente construcción jurídica, que de manera infructuosa ha buscado "afanosamente en el derecho la solución que está en los hechos". L.J. Lanzaroni, *La aparente inferioridad de los hechos*, 1975-B Rev. Jur. Arg. La Ley 1085, 1088 (1975).

*Recapitulando*, la regla especial de responsabilidad vicaria de la Sec. 13-101 en la Ley de Vehículos y Tránsito de Puerto Rico, *supra* —siguiendo el principio general de causalidad y nexo— afecta sólo al arrendatario financiero, el "verdadero dueño" del vehículo, quien lo tiene en su posesión inmediata, en aptitud de controlar su uso, y quien decide ponerlo o no en circulación y bajo qué condiciones. Bansander Leasing Corporation, acreedor arrendador financiero, que está *aislado* por completo de la operación de día a día del vehículo, no es susceptible de ser situado en dicha norma de responsabilidad excepcional; el contrato ante nos no rebasa las funciones normales de financiamiento.

¿INTERPRETACIÓN o LEGISLACIÓN JUDICIAL?